The People of the State of New York ex rel. William H. D. Sweet, Appellant, v. Henry H. Lyman, State Commissioner of Excise of the State of New York, Respondent.

*Civil service — the appointing power may decline to make a probationary appointment absolute — such refusal is not a "removal" within the meaning of chapter 821 of 1896.*

The Civil Service Act (Laws of 1883, chap. 354), providing for a period of probation before an appointment shall be made absolute, limits the term of the appointment thereunder to the probationary period fixed by the civil service rules, and confers authority upon the appointing power to refuse, at the expiration of the probationary period, to make the appointment absolute if it determines that the probationary appointee is not qualified for the position.

A refusal to make the appointment absolute is not a "removal" of the probationary appointee from his position within the meaning of chapter 821 of the Laws of 1896, declaring that no honorably discharged Union soldier, holding a position by appointment or employment, "shall be removed from such position or employment except for incompetency or misconduct shown, after a hearing upon due notice, upon the charge made, and with the right to such employee or appointee to a review by writ of certiorari."

Herrick, J., dissented.

Appeal by the relator, William H. D. Sweet, from an order of the Supreme Court, made at the Ulster Special Term and entered in the office of the clerk of the county of Albany on the 18th day of May, 1897, denying the relator's motion for a peremptory writ of mandamus to compel the said Henry H. Lyman, State Commis-

sioner of Excise of the State of New York, to reinstate the relator in the position of special agent in the excise department.

The relator, an honorably discharged Union soldier, having successfully passed the civil service examination required by the provisions of chapter 354, Laws of 1883, and another examination required by the defendant, received from the latter the following communication :

> "OFFICE OF DEPARTMENT OF EXCISE,
> "ALBANY, Sept. 25th, 1896.

"To WILLIAM H. D. SWEET,

> "19 N. Y. C. Avenue, Albany, N. Y.:

"This is to inform you that, under the provisions of the Civil Service Rules, I have selected you for appointment to the position of special agent in this Department for a probationary term of three months from the date when you begin service. Should your conduct and efficiency during such probationary term prove satisfactory, you will, at its close, receive a regular appointment; otherwise your employment will cease. The salary attached to such position is at the rate of $1,200 per annum.

"This conditional appointment does not preclude prompt discharge from service at any time during such probationary term, in case of misconduct or inefficiency.

"A prompt reply is requested, stating whether this appointment is accepted, and giving the earliest date when you can present yourself for service.          Very respectfully,

> "H. H. LYMAN, *State Com. of Excise.*"

Having accepted the appointment, the relator, on the same day, was formally appointed to the office of special agent, and thereafter entered upon the duties of said position at Ogdensburgh.

About December 19, 1896, he received from the defendant the following letter :

> "ALBANY, Dec. 19th, 1896.

"MR. W. H. D. SWEET, Ogdensburgh, N. Y.:

"DEAR SIR.— I have to inform you that your efficiency and capacity for the work required of a special agent, during your employment in this department for a probationary term of three months, have not been found satisfactory, and that in accordance

with the terms of your original appointment, as prescribed in the civil service rule No. 36, your employment by this department will cease on the 23d day of December, 1896.

" Yours, respectfully,

"H. H. LYMAN, *State Commissioner of Excise.*"

Since the 23d day of December, 1896, the relator has not received any assignment of duty from the department of excise, and he has been informed by the defendant that he would not thereafter be employed.

The relator thereafter applied to the court below for a peremptory writ of mandamus directed to the defendant, commanding him to reinstate said relator in the position of special agent in the department of excise, and to take such action as might be necessary to audit his claim for services since the 23d day of December, 1896.

On the hearing of the motion for a mandamus, the State Commissioner of Excise read an affidavit which alleged want of qualification, and incapacity and unfitness on the part of the relator for the office in question.

The motion for a peremptory writ of mandamus was denied in the court below, and from the order thereupon entered the relator has appealed to this court.

*Eugene D. Flanigan,* for the appellant.

*T. E. Hancock, Attorney-General,* and *G. D. B. Hasbrouck, Deputy Attorney-General,* for the respondent.

PUTNAM, J.:

By the provisions of chapter 354, Laws of 1883, the Governor was authorized to appoint three Civil Service Commissioners who were authorized to aid the Governor in promulgating rules for carrying the act into effect. The statute provides for open, competitive examinations for testing the fitness of applicants for the public service; that appointments should be made from those graded highest as the result of such competitive examinations; that "there shall be a period of probation before any absolute appointment or employment aforesaid."

In pursuance of and within the power conferred by the statute in question, the Governor promulgated the following rule: "Every original appointment or employment in the civil service shall be for a probationary term of three months, at the end of which time, if the conduct and capacity of the person appointed or employed shall have been found satisfactory, the petitioner shall be absolutely appointed or employed, but otherwise his appointment shall cease."

The appointment of relator for the probationary period of three months was, therefore, authorized. His term continued for such period and ended with its expiration. If he was competent and had not been guilty of misconduct, at the expiration of the three months, he was undoubtedly legally entitled to a reappointment. Whether he was or was not competent, was for the defendant to decide. The act provides: "Notice shall be given in writing by the appointing power to said commission of the person selected for appointment or employment from among those who have been examined, of the place of residence of such persons, of the rejection of any such persons after probation," etc. This provision evidently contemplates that the appointing power shall have the power to reject an applicant for an office after probation.

Hence the probationary appointment of the relator for three months was authorized by the act of 1883. At the end of that period the defendant had the power to decline to reappoint him, if not qualified for the position, and to pass on the question of such qualification.

The question in the case is whether the provision of chapter 821, Laws of 1896, amending chapter 312 of the Laws of 1884, which provides that no honorably discharged Union soldier holding a position by appointment or employment "shall be removed from such position or employment except for incompetency or misconduct shown, *after a hearing upon due notice upon the charge made*, and with the right to such employee or appointee to a review by writ of certiorari," applies to this case.

The relator was not removed from any position. He was properly and legally appointed to the position of special agent for three months, and at the expiration of his term the State Commissioner of Excise declined to make an absolute appointment. If the construction placed upon the act of 1883 by the learned counsel for the

appellant is correct, it deprives the provision of that statute, that there shall be a period of probation before an absolute appointment is made, of all force and effect. As he construes the act, in the case of an honorably discharged Union soldier, there can be no probationary appointment; the original appointment, although stated to be for three months, is in effect an absolute one for an unlimited period, as the appointee cannot be deprived of the office at the expiration of the probationary period, unless for the same reason. and after the same procedure as if the appointment was an absolute one, and for an unlimited period.

While the question as to the construction that should be given to chapter 821, Laws of 1896, is not entirely clear, we are disposed to think its provisions relating to the removal from office of a Union soldier were not intended to apply to the case of one to whom the State Commissioner of Excise declined to give an absolute appointment after the expiration of the probationary period. We do not regard such declination as a removal. The act no more applies to such a case than it would have applied to the act of the defendant had he, after the relator's successful civil service examination, refused to make the probationary appointment.

It may be said that if an appointing officer of the State can in such a case as this, after a probationary period, arbitrarily, without notice to the appointee, and without giving him an opportunity to produce proofs as to his capacity, or to be heard in the matter, decline to give him an absolute appointment, such officer has the power to defeat the purpose of the Civil Service Act. We think, however, that in this case, if the relator was competent and had not been guilty of misconduct during the probationary period, and was entitled to an absolute appointment, that he was not without a remedy. At the expiration of his original appointment for three months he could, alleging the facts, and that he was qualified to perform the duties of special agent, and had been guilty of no misconduct, have applied for an alternative writ of mandamus. Had the defendant denied his competency, that question could have been tried in such proceeding. Had it been determined in favor of the relator, he would have been entitled to a peremptory writ compelling the State Commissioner of Excise to give him an absolute appointment (Chap. 821, Laws of 1896), and, under the provisions

of the act of 1896, in such proceeding, the burden would have been upon the defendant to show the relator's incompetency.

On the hearing of the motion for a peremptory mandamus below, the defendant read an affidavit which, if true, showed that the relator was incompetent for the position of special agent, and that the State Excise Commissioner properly declined to reappoint him. On this appeal we are compelled to assume that the averments in the defendant's opposing affidavit are true, and that the relator was in fact incompetent to discharge the duties of the position of special excise agent. (*People ex rel. Corrigan* v. *The Mayor, etc.,* 149 N. Y. 215; *Matter of Haebler* v. *N. Y. Produce Exchange,* Id. 414; *People ex rel. Port Chester Savings Bank* v. *Cromwell,* 102 id. 477.)

When the defendant read the affidavit alleging the relator's incompetency, we think the latter should have asked for an alternative writ and obtained a trial. If on such trial the defendant had failed to show the incompetency of the relator for the position of special agent in the excise department, an order requiring the State Commissioner of Excise to give him an absolute appointment might have been properly granted.

We are of opinion that the relator has not been removed from a position or employment within the meaning of chapter 821, Laws of 1896, and, hence, that the order should be affirmed, with costs.

All concurred, except HERRICK, J., dissenting.

LANDON, J.:

I concur in the result. The only appointment which the relator received was a probationary one of three months. As that expired by its own limitation, he was not removed from office, and, therefore, cannot invoke chapter 821, Laws of 1896, which secures him from arbitrary removal during the term for which he was appointed. All he can complain of is that he was not at the end of the probationary appointment absolutely appointed. Civil service rule 36 says that, to entitle him to such absolute appointment, his conduct and capacity "shall have been found satisfactory." The relator has not shown that his conduct and capacity have been found satisfactory, but is confronted with the defendant's finding the other way. The relator, therefore, has not shown his clear legal right to an absolute appoint-

ment. But I think it was for the appointing power to pass upon his conduct and capacity during the probationary period, for the reason that if the defendant had found them satisfactory, it was his duty to appoint him absolutely, and this power for the purpose of absolute appointment implies the power to find either way. Such finding was in its nature a judicial act, and cannot be reviewed upon mandamus.

HERRICK, J. (dissenting):

I am unable to concur either in the reasoning or result of Mr. Justice PUTNAM's and Mr. Justice LANDON's opinions.

Section 9 of article 5 of the Constitution provides that appointments in the civil service of the State, and in the different subdivisions thereof, shall be made according to merit and fitness, to be ascertained as far as practicable by competitive examinations; and it further provides " that honorably discharged soldiers and sailors from the army and navy of the United States, in the late civil war, who are citizens and residents of this State, shall be entitled to preference in appointment and promotion without regard to their standing on any list from which such appointment or promotion may be made."

The Court of Appeals has held that it is " clear that this section of the Constitution, read according to its letter and spirit, contemplates that in all examinations, competitive and non-competitive, the veterans of the civil war have no preference over other citizens of the State, but when, as the result of those examinations, a list is made up from which appointments and promotions can be made, consisting of those whose merit and fitness have been duly ascertained, then the veteran is entitled to preference, without regard to his standing on that list." (*Matter of Keymer*, 148 N. Y. 219, 225.)

Prior to the adoption of this provision of the Constitution, various laws had been passed providing for preference to veterans. None of these laws, however, prevented veterans who had once been appointed from being summarily removed; to remedy that defect in the law the then existing statute (Laws of 1884, chap. 312) was amended by chapter 716 of the Laws of 1894, which provided that removals could not be made except for incompetency and conduct

inconsistent with the position held by the employee or appointee. It was held, however, that, under this law, it was left to the appointing power to determine whether the facts existed which authorized a removal, subject to responsibility for any willful or perverse action; and that no notice or opportunity to be heard was required to be given to the person whose removal was contemplated before the power could be exercised. (*People ex rel. Fonda* v. *Morton,* 148 N. Y. 156.)

To remedy the defect in the statute which was revealed by the decision of the case of *People ex rel. Fonda* v. *Morton,* the statute in relation to veterans was further amended by chapter 821 of the Laws of 1896, which provided that no veteran holding a position by appointment or employment in the State of New York, or in any of the subdivisions thereof, should be removed from such position or employment, "except for incompetency or misconduct shown, after a hearing, upon due notice, upon the charge made."

At the time the relator was removed from office the Constitution provided that veterans who had passed a civil service examination should be given a preference in employment or appointment, and the statute provided that one holding a position by employment or appointment could not be removed, except upon charges, and after notice of such charges and opportunity to be heard thereon.

It is to be presumed that the framers of the Constitution and the people who adopted it were in earnest in including this provision in reference to veterans of the late civil war, and intended that it should be complied with, and it is presumed that a like intent moved the Legislature in the passage of a statute which requires notice and an opportunity to be heard before such a person shall be removed from his employment or appointment; that neither the constitutional or statutory provisions were intended to be mere empty sentiments, sounding in patriotism and gratitude, but meaning nothing, but were intended to enforce a practical and substantial recognition of the loyal services of those who preserved the government from destruction; and both the Constitution and the statute should be interpreted and construed to effectuate that intent.

Neither the officers whose duty it is to execute the laws, nor the courts whose duty it is to interpret them, should be astute to discover ways and means whereby the letter of the Constitution and

the statute may be observed, but the spirit violated, and any statute in conflict with the Constitution, in spirit or in its results, should be disregarded as void, and any construction of a statute which enables the spirit of the Constitution or a statute to be evaded, should be frowned upon and rejected.

The reason given by the defendant for not giving the relator notice, is that he was never appointed. Having passed his competitive examination, it was the defendant's duty, under the Constitution, to appoint him; the appointment he did give him will be presumed to have been made pursuant to the Constitution, and holding a position by virtue of such appointment he can only be removed therefrom pursuant to the statute, and the defendant cannot be permitted to assert his disobedience of the Constitution as a reason why he is not bound by the requirements of the statute.

The preference given by the Constitution is an absolute preference to employment or appointment — an absolute appointment or employment, not a conditional or probationary one.

The only limitation is that the veteran shall have passed a competitive examination for merit and fitness; that is the only examination, the only test required. The Legislature has no power to add to that requirement of the Constitution, and having complied with it the veteran is entitled to be employed or appointed.

Chapter 821 of the Laws of 1896 provides for the manner of revoking or terminating such appointment or employment.

The result of his civil service examination has presumptively shown his merit and fitness, and secured him his employment or appointment; and before he can be removed it must be by his own misconduct, or by showing by actual demonstration that the result of his examination was incorrect or misleading, and that he is, in truth, unfit and incompetent, and upon those questions he is entitled to be heard.

If the practice indulged in in this case is to be upheld, then the appointment of a veteran who has passed his civil service examination can be prevented, and no preference, in fact, given to him; or, if it is held that he has had his preference under the Constitution by this probationary appointment, then he has been removed from the position he acquired by virtue of the provisions of the Constitution, without notice and without a hearing, as the statute pro-

vides, and thus a way is pointed out by which a veteran can be removed from the civil service list without receiving any appointment.

If the probationary appointment, so called, is not a final appointment which entitles the person appointed to hold his position unless removed upon charges, in the manner pointed out by the statute, then such final appointment is not an appointment made according to merit and fitness ascertained by competitive examinations, as the Constitution requires, but is one resulting from his conduct during his probationary term, such conduct being a sort of examination, necessarily non-competitive, and, therefore, not in accordance with the Constitution. Then, too, this latter examination is made and the result passed upon by the appointing officer.

The Court of Appeals, in answer to the argument that in counties, towns and villages where no examiners have been provided, or provisions made for carrying the Constitution into effect, each officer having appointments to make could himself examine the applicants for positions, and in that way determine who should be appointees by a competitive examination, said: " Undoubtedly, but it will readily be seen that this system would practically nullify the Civil Service Law and bring it into disrepute." (*Chittenden* v. *Wurster*, 152 N. Y. 345, 356.)

How much more will it tend to nullify and bring the law into disrepute where the appointing officer is conducting an examination which is non-competitive and of the result of which he is the sole and only judge, and where, upon charges of incompetency and unfitness, he is at once the accuser, witness and judge, and where the result is open to the suspicion, at least, that it is a mere arbitrary determination of the appointing officer that he does not want to employ or appoint the man in question. An interpretation that will practically nullify or bring a law into disrepute is to be avoided.

It is claimed, however, that the relator, by accepting the appointment tendered him, waived his right, if he had any, to an absolute appointment, because it is said that any statutory or even constitutional right can be waived.

I do not think that contention can prevail.

A waiver, to be effectual, must be intentional; must be made with full knowledge of the rights waived and with full knowledge

that such rights are being waived. And no element of coercion must enter into it; if the last is present, and either or both of the others are absent, the waiver is not effectual.

There are cases where the acts of the parties, although without knowledge of their rights, will in law constitute a waiver, as when the law makes such acts a waiver, or when the other party will be, or has been, placed in a disadvantageous position through such action. But the general rule as to waiver is as I have stated.

There can be no claim here that this case comes within any of the exceptions to the general rule.

There can be no pretense here that the relator intended to waive any of his rights under the Constitution or the statute, or that he knew he was doing so.

Can we say that the relator knew the full measure of his rights and knew what he was waiving? This court has been embarrassed in determining what they are. How can we say that he knew and waived them? Can we say that the element of coercion was lacking here?

The applicant for employment is not upon an equal footing with the employer; he is seeking position or employment; he recognizes that he is largely at the mercy of the one appointing or employing, and that a refusal to take what is tendered may, and probably will, result in depriving him of any employment or position.

What could the relator do in this case but accept what was offered to him, go to work and rely upon the law afterwards to protect him in the full measure of his rights.

To recapitulate, the naked facts of the case are, that the relator, an honorably discharged soldier, who served as such during the war of the rebellion, passed a competitive examination; that as a result of such examination he received an appointment in the civil service of the State; call it whatever kind of appointment you please, it was an appointment, and pursuant to it he held a salaried position in the State service. The statute (§ 1, chap. 821, Laws of 1896) provides that no such person " holding a position by appointment or employment in the State of New York   *   *   *   shall be removed from such position or employment, except for incompetency or misconduct shown, after a hearing upon due notice," etc. He was

removed from that position because of alleged incompetency without notice and without a hearing. It is claimed that he was not removed, but that the appointing officer declined to give him a permanent appointment because of his incompetency, the language of the officer being " that your efficiency and capacity for the work required  *   *   *   have not been found satisfactory.  *.  *  * Your employment by this department will cease on the 23d day of December, 1896."

Call it by what name you please, a refusal to make a permanent appointment or a cessation of employment, the fact remains that the relator was deprived of the employment he was engaged in under the State for alleged incompetency, without notice or opportunity to be heard.

The result seems to me not simply an evasive but a plain, palpable violation of the statute, and nullification of the spirit and intent of the Constitution.

The order should be reversed and the application of the relator granted.

Order affirmed, with ten dollars costs and disbursements.

A motion having been made for a reargument of this case, the following opinion was written:

PER CURIAM:

In one of the opinions delivered in this case it was said that " The relator was not removed from any position. He was properly and legally appointed to the position of special agent for three months, and, at the expiration of his term, the State Commissioner of Excise declined to make an absolute appointment.  *   *   * We are of opinion that the relator has not been removed from a position or employment within the meaning of chapter 821, Laws of 1896, and, hence, that the order should be affirmed, with costs." The above quotation shows what was intended to be decided.

In the opinion referred to, treating this proceeding as an application of the relator to compel his absolute appointment by the defendant as a special agent of the excise department of the State, and not one to reinstate him in an office that had expired, it was suggested that, in a proceeding by mandamus under the provisions of chapter

821, Laws of 1896, the question of the business capacity of the relator could be tried and determined. This suggestion, however, was not considered by the court, and must be regarded merely as an opinion of the justice who delivered the opinion.

What this court determined was, that "the only appointment which the relator received was a probationary one of three months. As that expired by its own limitation, he was not removed from office, and, therefore, cannot invoke chapter 821, Laws of 1896, which secures him from arbitrary removal during the term for which he was appointed."

The motion should be denied, but, under the circumstances, without costs.

All concurred, except PUTNAM and HERRICK, JJ., dissenting.

PUTNAM, J. (dissenting):

In my examination of the questions raised by the appeal in this case, I reached the conclusion that the relator, having been appointed by the defendant as agent, for the period of three months, and having accepted such appointment, has not been removed from the office. He has been retained by the defendant during the term for which he was employed, and, hence, the provisions of chapter 821, Laws of 1896, in reference to removals from office, did not apply to his case. But I was also of the opinion that, considering the relator's application as one to compel an absolute appointment, while he was not entitled to a peremptory writ of mandamus in consequence of the affidavit read by the defendant, which, if the relator's application was one merely for a peremptory mandamus, we were compelled to regard as true, he would have been entitled to an alternative writ under the provisions of the act of 1896, had he asked for that relief. My attention was not then called to the fact that the relator did ask, in case his motion for a peremptory writ of mandamus should not be granted, for an alternative writ. I think, therefore, our order should be set aside, and one granted modifying that of the court below so as to provide for granting the prayer of the relator for an alternative writ.

Motion for reargument denied.