Turner, J.
 

 Disposing first of the contention by relatrix McLaughlin that her appointment became effective November 7, 1946, Section 1359-11, General Code, provides as follows :
 

 “For the purpose of administering the provisions of this act there is hereby created in the State Department of Public Welfare a Division of Aid for the Aged, herein referred to as the ‘division.’ The chief of the division shall be under the direct supervision and control of the Director of Public Welfare, and shall be appointed by the director with the approval of the Governor. He shall be a person qualified by training and experience, and shall receive a salary of $4,800
 
 *363
 
 per year. He shall appoint all necessary assistants, investigators, clerks, and other employees, and fix their duties and salaries,
 
 subject to the approval of the Director of Vublic Welfare.”
 
 (Italics ours.)
 

 The Court of Appeals unanimously found that relatrix’ appointment did not become effective until November 16, when it was approved by the Director of Public Welfare. With this conclusion we agree. Therefore, relatrix was not entitled to the procedure prescribed in Section 486-17, General Code.
 

 Common to both cases are the two questions:
 

 1. Were the letters of dismissal transmitted to the State Civil Service Commission by the respondent Babb, under date of February 13, 1947, insufficient to constitute in each cage a record of the employee’s service as required under Section 486-13, General Code ?
 

 2. Did the State Civil Service Commission exercise its proper discretionary powers, if any, in approving the removals of relator and relatrix?
 

 The reasons given for such removals are set out in the statement of facts above.
 

 The applicable portion of Section 486-13, General Code, is as follows:
 

 “At the end of the probationary period the appointing officer shall transmit to the commission a record of the employee’s service, and if such service is unsatisfactory, the employee may, with the approval of the commission, be removed or reduced without restriction * *
 

 There can be no question that the services of the relator and relatrix, respectively, were unsatisfactory to the appointing power and that the State Civil Service Commission did approve the removals.
 

 Neither the statute nor the administrative regulations define the term “record.” Does that term call for the conclusion of the appointing authority or must
 
 *364
 
 the details of the record be so minute that the Civil Service Commission may act as a reviewing body? Is the purpose of such notice to and approval by the Civil Service Commission required for the purpose of the-records of the State Civil Service Commission or does-the- commission possess appellate jurisdiction in such, cases?
 

 In defining the duties of the Civil Service Commission, Section 486-7, General Code, provides in part:
 

 “The commission shall, first: Prescribe, amend' and enforce administrative rules for the purpose of carrying out and making effectual the provisions of this act.”
 

 In the next paragraph it is provided that certain* minutes and records shall be kept, but there is no reference to probationary appointments.
 

 Under the provision, “Third,” it is provided that “the commission shall prepare, continue and keep units office, a complete roster of all persons in the classified service.”
 

 ■Paragraph “Fourth” provides for investigation and taking of “testimony relative to any matter
 
 which the commission has authority to investigate.”
 
 (Italics ours.)
 

 Under “Fifth,” it is provided that the commission-may take evidence on appeal “in relation to any matter which it has authority to investigate, inquire into- or hear. ”
 

 The commission has only such powers as are conferred by statute and there is no provision for appeal of the dismissal at the end of the probationary period, of a probationary appointee. However, if the appointing power abuses his power or duties in this .respect,, an adequate remedy is to be found in Section 486-22,. General Code, which provides:
 

 “Whenever a civil service commission shall have-reason to believe that any. officer, board, commission,
 
 *365
 
 head of a department, or person having the power of appointment, .lay-off, suspension or removal, has abused such power by making an appointment, lay-off, reduction, suspension, or removal in violation of the provisions of this act, it shall be the duty of the commission to make an investigation, and if it shall find that such violation of the provisions or the intent and spirit of this act has occurred, it shall make a report thereof to the Governor, or in the case of a municipal officer or employe to the mayor or other chief appointing authority, who shall have the power to remove^ forthwith such guilty officer, board, commission, head of department, or person; an opportunity first having been given to such officer, employe or subordinate of' being publicly heard in person or by counsel in his own defense, and such action of removal by the Governor,, mayor or other chief appointing authority shall be final except as otherwise provided herein:”
 

 In the case of
 
 Wheeling Steel Gorp.
 
 v.
 
 Evatt, Tax Commr.,
 
 143 Ohio St., 71, 54 N. E. (2d), 132, it was held in paragraph seven of the syllabus:
 

 “The action of an administrative officer or board within the limits of the jurisdiction conferred by law is presumed, in the absence of proof to the contrary, to be valid and to have been done in good faith and in the exercise of sound judgment. ’ ’
 

 In 32 Ohio Jurisprudence, 953, Section 93, it is said:
 

 “No doctrine is better established than-that the acts of an officer, within the scope of his powers and authority, are presumed to be rightly and legally performed until the contrary appears; that is, the action of a public officer or board, within the limits of the jurisdiction conferred by law, is presumed to be not only valid but also in good faith and in the exercise of sound judgment.”
 

 In the
 
 per curiam
 
 opinion in the case of
 
 State, ex rel.
 
 
 *366
 

 Stine,
 
 v.
 
 Atkinson, Admr.,
 
 138 Ohio St., 217, 219, 34 N. E. (2d), 207, it was held:
 

 ‘ ‘ Public officials are presumed to perform the duties of their offices in good faith and are allowed considerable leeway in the dismissal of civil service probationers. It is apparent that the relator was not a satisfactory employee
 
 in the estimation of the respondent
 
 and that there was at least some real basis for such determination, which the civil service commission recognized and accepted.” (Italics ours.)
 

 In the report of the Administrative Law Commission to the Governor and to the General Assembly, under daté of January 15, 1945, it is said at page 126:
 

 “The rapid growth of administrative agencies is one of the most significant governmental developments of recent years. * * * In spite of this seeming acceptance of administrative agencies, they have been widely criticized for failing to adhere to standards and values accepted in other branches of government. This deficiency arises primarily from the manner in which administrative agencies function. Created, as each is, for a particular purpose, the tendency has been to let each agency work out its administrative process as it sees fit. The result has been lack of uniformity in the procedures of the numerous agencies, and some lack of adherence to fundamental standards.”
 

 While the foregoing statement was made in connection with 'the licensing features of certain commissions, it does apply to the functions generally of all commissions.
 

 In the case of
 
 Green
 
 v.
 
 State Civil Service Commission,
 
 90 Ohio St., 252, 107 N. E., 531, this court held that a legislative act authorizing the civil service commissioli to prescribe, amend and enforce rules with reference to civil service did not constitute a delegation of power to enact laws. However, there can be no question that the State Civil Service Commission is
 
 *367
 
 authorized to adopt procedural rules for the conduct of its business.
 

 Section 21 of Rule VII of Rules and Regulations of the State Civil Service Commission, adopted pursuant to Section 486-7, General Code, provides:
 

 “The probationary period provided by Section 486-13 of the Civil Service Law is hereby fixed at ninety days dating from effective date of permanent appointment and including the day of permanent appointment. At the close of the probationary period, any appointee whose services have not been satisfactory may be removed or reduced by the appointing officer without restriction, upon filing a statement of reasons for such removal or reduction satisfactory to the civil service commission. ’ ’
 

 There are approximately forty administrative agencies in the state of Ohio which employ hundreds of civil service appointees. In construing the words of Section 486-13, General Code, “a record of the employee’s service,” it must necessarily be recognized that this question must be approached from a realistic standpoint. Does such provision require the appointing power with numerous employees to keep a minute record of all the work of all probationary appointees or does the provision require simply the opinion of the appointing, power in respect of the particular appointee? We are of the opinion that it is the latter.
 

 As there is no provision for an appeal to or review by the State Civil Service Commission, what would be accomplished by a large amount of clerical work and making of records? We are of the opinion that such provision does not require a list of acts or omissions by the appointing power, but merely requires his opinion as to whether the probationary appointee has satisfactorily served his probationary period. The notice to and approval of the Civil Service Commission is required for the purposes of the commission’s
 
 *368
 
 records and to' prevent merely frivolous reasons, which do not serve to test the quality of the service, from being used as an excuse for not continuing the probationer’s service.
 

 The Constitution provides (Article XV, Section 10) :
 

 “Appointments and promotions in the civil service of the state * * * shall be made according to merit and fitness, to be ascertained,
 
 as far as practicable,
 
 by competitive examinations. *
 
 *
 
 *” (Italics ours.)
 

 That sole reliance is not to be placed upon competitive examinations is illustrated by the provisions ■of Section 486-13, General Code,
 
 supra,
 
 which provides for probationary appointments and “no appointment ■or promotion shall be deemed finally made until the appointee has
 
 satisfactorily
 
 served his probationary period.” (Italics ours.)
 

 In Field’s Civil Service Law, at page 108, it is said under “Probationary Appointments:”
 

 “Civil service laws and regulations quite commonly provide for a probationary period that must be served before the person appointed to a position becomes a regular or permanent appointee.
 

 ‘ ‘ The existence of a constitutional provision, such as that in New. York, which requires appointments to be made on the basis of merit and fitness does not operate in and of itself to prevent the requirement by statute of a probationary period. The constitutional requirement that merit and fitness be ascertained by examination so far as practicable was said to leave room for the possibility that examination might not be practicable as the sole test of merit and fitness, and for that reason a probationary service to determine fitness might be imposed.”
 

 In the case of
 
 People, ex rel. Sweet,
 
 v.
 
 Lyman, State Commr.,
 
 157 N. Y., 368, 52 N. E., 132, it is said:
 

 “It is manifest that the purpose of the statute and rule relating to probationary appointments was to ■enable the appointing officer to ascertain and correct
 
 *369
 
 any error or mistake of himself or of the Civil Service Commission arising from the inefficiency of a candidate certified as eligible where he might prove incompetent to discharge 'the duties of the place to which he was appointed. ’ ’
 

 Again in Field’s Civil Service Law, at page 110, it is said:
 

 ‘ ‘ The power to appoint belongs not to the civil service commission but to the appointing officer. It is his decision which permits probationary appointment to ripen into permanent appointment, not the decision of the commission; unless specifically restricted, the appointing officer determines whether probationary service is satisfactory.”
 

 In the concurring opinion of Landon, J., in the case of
 
 In re Sweet,
 
 50 N. Y. Supp., 444, it is said:
 

 “* * * j think it was for the appointing power to pass upon his [the relator’s] conduct and capacity during the probationary period, for the reason that, if the defendant [the appointing power] had found them satisfactory, it was his duty to appoint him absolutely, and this power for the purpose of absolute appointment implies the power to find either way.”
 

 We are of the opinion that the instant cases are to be governed by the doctrine laid down in two cases decided by this court.
 

 In the case of
 
 State, ex rel. Artman,
 
 v.
 
 McDonough,
 
 132 Ohio St., 47, 4 N. E. (2d), 982, it is said in the syllabus as follows:
 

 “1. Under the provisions of Section 486-13, G-eneral Code, no appointment to a civil service position shall be deemed finally made until the appointee has satisfactorily served the prescribed probationary period.
 

 “2. If, at the end of the probationary period, the service of a probationary appointee is unsatisfactory, the appointing officer may, with the approval of the
 
 *370
 
 civil service commission, remove or reduce such appointee without restriction.
 

 “3. The removal of such appointee is governed by the specific provisions of Section 486-13,' General Code, and not by the general provisions of Sections 486-17 and 486-17a, General Code, relating to removal and appeal. ’ ’
 

 In the case of
 
 State, ex rel. Stine,
 
 v.
 
 Atkinson, Admr., supra,
 
 it was. said in the
 
 per curiam
 
 opinion at page 219:
 

 “In the depositions filed by the relator he attempts to show that his work as a claims examiner was in fact of a high order and that' his dismissal was largely due to his political affiliations.
 

 “As defined by Section 12283, General Code, ‘mandamus is a writ issued, in the name of the state, to an inferior tribunal, a corporation, board, or person, commanding the performance of an act which the law specially enjoins as a duty resulting from an office, trust or station.’
 

 “Under such definition the relator is asking this court to override the action of the respondent in removing the relator and to nullify the approval of such conduct by the civil service commission, both of which involved the exercise of discretionary powers. * * *
 

 “This court may not constitute itself a monitor to control the discretion of public officers in relation to their employees.”
 

 It follows, therefore, that the judgments of the Court of Appeals (by a divided court) granting writs of mandamus in the instant cases should be and hereby are reversed and the respective actions dismissed.
 

 Judgments reversed.
 

 Weygandt, C. J., Matthias, Hart, Sohngen and Stewart, JJ., concur.