THE STATE, EX REL. KELLEY, *v.* HILL ET AL.

(No. 260—Decided June 27, 1950.)

*Mr. Reed M. Winegardner* and *Mr. Dwight A. Swisher,* for relator.

*Mr. W. W. Hill,* for respondents.

WISEMAN, J. This is an action in mandamus originating in this court, in which the relator, Elmer Kelley,

prays for an order requiring the respondents, the city manager, the chief of police, auditor and members of the civil service commission of the city of Washington Court House, Fayette county, Ohio, to recognize the relator as the lawful incumbent to the position of city patrolman, and to assign him to duty as such.

The controlling facts are not in dispute and, for the most part, have been stipulated.

In 1943, the relator became city patrolman under a provisional appointment. He continued in that employment until May 25, 1945, at which time he took a civil service examination for the position and received a grade of one hundred per cent. After being certified by the civil service commission to the city manager, he was given a permanent appointment as patrolman, on May 31, 1945. Relator served as such patrolman under the permanent appointment from June 1, 1945, until February 1, 1946. On January 28, 1946, he was notified that his employment was terminated effective February 1, 1946. The notice states:

"The reason for termination of such employment is the return from military service of a former incumbent of such position and his restoration to his former position in accordance with Section 486-16a of the General Code of the state of Ohio.

"You will be granted all the rights and privileges set forth in Section 486-16a of the General Code."

Thereafter the relator was employed as patrolman during the vacation period in 1946, the last day of his employment being August 31, 1946. On May 20, 1947, a civil service examination was given for patrolmen and from the certified eligible list one Willis Dawson was appointed as patrolman, effective June 1, 1947. The name of the relator was not placed on the eligible list. Other appointments of patrolmen were made in

1948 and 1949 from an eligible list on which the name of the relator did not appear.

The question for determination is whether the relator was deprived of his rights under the civil service laws of the state of Ohio after his employment was terminated on February 1, 1946.

It was stipulated that the relator received a permanent appointment effective June 1, 1945, without first having been appointed for the three-month probationary period as provided in Section 486-13, General Code. It is conceded that the relator, after receiving such permanent appointment, served as patrolman for a period far exceeding the probationary period of three months. No report was made by the appointing authority to the civil service commission at the end of the three-month period indicating that his services were unsatisfactory. In the absence of a showing to the contrary it may reasonably be presumed that his services were satisfactory. The statutory provision relative to the probationary period is for the benefit of the appointing power. The validity of his appointment cannot be affected by the neglect of the appointing power to comply with the provision of the act requiring his report to be made at the end of the three-month period. In the absence of a report at the end of the three-month period stating that the services of relator were unsatisfactory, his appointment became permanent at that time. Consequently he was serving under a legal, permanent appointment at the time of the termination of his employment. See *State, ex rel. Noble*, v. *Atkinson, Admr.*, 31 Ohio Law Abs., 576. The case of *State, ex rel. Artman*, v. *McDonough, Dir.*, 132 Ohio St., 47, 42 N. E. (2d), 982, is clearly distinguishable.

Respondents contend that the relator has been

guilty of laches in that he failed to seek redress from his alleged wrongful discharge on February 1, 1946, until December 15, 1947, the date on which the action was instituted. Relator does not claim his discharge was wrongful, but on the other hand concedes that it was in accordance with law, his discharge being due to the return from military service of a former patrolman and the restoration of such person to his former position as provided in Section 486-16a, General Code. No right of action accrued at the time of the discharge. Relator's right of action accrued at the time of the appointment of Dawson as patrolman who did not enjoy priority of appointment over the relator. This appointment was made on June 1, 1947. In our opinion the relator is not guilty of laches in delaying the institution of the action for a period of six and one-half months.

We now consider two sections of the Code in determining the rights of the relator. Section 486-16a, General Code, in part provides:

"When such classified employee is restored to his position and to the status, rank, rating or qualifications hereinbefore provided following such military service, the former incumbent of such position who has not entered such armed services shall be demoted to the next lower rank, and the youngest classified employee in point of service in the next lower rank shall be demoted, and so on down until the youngest employee in point of service has been reached, who shall be laid off, if necessary. *The person so laid off shall be placed in an equitable rank upon the same eligible list from which he secured original appointment, or an eligible list subsequently established for the position,* or upon an eligible list which the commission shall regard as appropriate for the classification involved.

The term 'placed in equitable rank' as used herein shall mean a rotation purely on the basis of prior service.'' (Emphasis ours.)

Section 486-16a, General Code, must be construed in conjunction with Section 486-17b, General Code, which in part provides:

''Whenever it becomes necessary in a police or fire department, through lack of work or funds or for causes other than those outlined in Section 486-17a of the General Code, to reduce the force in such department, the youngest employee in point of service shall be first laid off. Should a position in the police or fire department once abolished or made unnecessary be found necessary to be recreated or reestablished within three years from the date of abolishment, *or should a vacancy occur* through death, resignation, or *through any other cause within three years from the date of the abolishment of the position or lay off, the oldest employee in point of service of those laid off shall be entitled to same providing he was at the date of his separation a regular and permanent employee.*'' (Emphasis ours.)

It is our conclusion that the relator was, at the time of his separation from employment, ''a regular and permanent employee'' and as such was entitled to the benefits of the civil service law. The relator's name was never placed on the same eligible list from which he secured original appointment. Neither was it placed on an eligible list subsequently established for the position as required by Section 486-16a, General Code. A vacancy having occurred within three years after the relator's layoff, and the necessity for the appointment of a patrolman having arisen, the relator was entitled to the appointment under the provisions of Section 486-17b, General Code, since he en-

joyed priority of appointment. The duty to make the appointment according to the provisions of the Civil Service Act rests on the appointing power and a formal application for the position by the one entitled thereto is not required.

Respondent, city manager, states that he did not appoint the relator because he did not consider him a competent patrolman. His competency as a patrolman is not an issue and this question cannot be tested in this case.

The above-quoted provisions of the civil service laws are mandatory and the failure to comply therewith gives rise to a right of action in mandamus to compel compliance.

A writ of mandamus may issue as prayed for.

*Writ allowed.*

MILLER, P. J., and HORNBECK, J., concur.