WALTON, APPELLEE, *v.* MONTGOMERY COUNTY
WELFARE DEPARTMENT, APPELLANT, ET AL.

[Cite as Walton v. Welfare Dept. (1982), 69 Ohio St. 2d 58.]

(No. 81-355—Decided January 20, 1982.)

*Sindell, Lowe & Guidubaldi Co., L.P.A., Mr. Steven A. Sindell* and *Ms. Claudia R. Eklund,* for appellee.

*Mr. Lee C. Falke,* prosecuting attorney, *Ms. Barbara P. Gorman* and *Mr. Jeffrey M. Silverstein,* for appellant.

WILLIAM B. BROWN, J.  The first question presented is whether a probationary employee who has completed 60 days or one-half of her probationary period, whichever is greater, may be removed for unsatisfactory service without right of appeal to the State Personnel Board of Review. For the following reasons, we hold that no right of appeal is provided to such employee by statute or by Section 10, Article XV of the Ohio Constitution.

Since 1913, Ohio has provided for a probationary period for civil service employees. The requirement of a period of probationary service has been held to be part of a valid statutory scheme implementing Section 10, Article XV of the Ohio Constitution. *State, ex rel. Clements,* v. *Babb* (1948), 150 Ohio St. 359, 368-369. Specifically, in *Babb,* this court held that the requirement of the Ohio Constitution that appointments and promotions be ascertained by competitive examination "as far as practicable" leaves room for the possibility that examination might not be the sole test of merit and fitness. For that reason a probationary period might be imposed to aid in determining fitness. *Id.* Successful completion of the prescribed probationary period is required before appointment to a civil service position is made final. *State, ex rel. Artman,* v. *McDonough* (1936), 132 Ohio St. 47, 49.

Since the probationary period is for the benefit of the appointing authority to aid in the determination of merit and fitness for civil service employment, *State, ex rel. Kelley,* v. *Hill* (1950), 88 Ohio App. 219, 221, the General Assembly historically has provided for a degree of leeway in the dismissal of probationary employees. *State, ex rel. Stine,* v. *Atkinson* (1941), 138 Ohio St. 217, 219. As originally enacted, G. C.

486-13 (predecessor to R. C. 124.27)[1] provided that leeway at the end of the probationary period:

" * * * At the end of the probationary period the appointing officer shall transmit to the civil service commission a record of the employe's service, and if such service is unsatisfactory, the employe may with the approval of the commission, be removed or reduced without restriction; but dismissal or reduction may be made during such period as provided in section 17 hereof." (103 Ohio Laws 698.)

Although this statute appeared to provide appeal rights for employees dismissed *during* the probationary period, the reported cases uniformly addressed the issue of appeal from

[1] The major amendments to G. C. 486-13 were as follows: in 1915, probationary removals made during such period were to be such as provided in both G. C. 486-17 and 486-17(A), 106 Ohio Laws 409; in 1953, the section was recodified as R. C. 143.20; in 1961, the section was amended to read, in part, as follows:

"All original and promotional appointments including provisional appointments made pursuant to section 143.23 of the Revised Code, shall be for a probationary period, not less than sixty days nor more than one year, to be fixed by the rules of the director, except original appointments to a police department as a policeman or policewoman which shall be for a probationary period of one year, and no appointment or promotion is final until the appointee has satisfactorily served his probationary period. Service as a provisional employee in the same or similar class shall be included in the probationary period. If the service of the probationary employee is unsatisfactory he may be removed or reduced at any time during his probationary period after completion of sixty days or one-half of his probationary period, whichever is greater. Unless the probationary appointee has been removed or reduced earlier, the appointing authority at any time during the ten day period before the end of the probationary period, shall inform the director, in writing, of his decision either to make the appointment of the probationary appointee final or to remove such appointee. If the appointing authority's decision is to remove the appointee, his communication to the director shall indicate the reason for such decision. Dismissal or reduction may be made under provisions of sections 143.26 and 143.27 of the Revised Code during the first sixty days or first half of the probationary period, whichever is greater. * * * " 129 Ohio Laws 1079.

In 1969, the appointing authority was no longer required to inform the director in writing of the decision to remove a probationary employee during the ten-day period before the end of the probationary period, 133 Ohio Laws 862; in 1973, R. C. 143.20 was renumbered R. C. 124.27, 135 Ohio Laws 613; see, also, 111 Ohio Laws 390, 114 Ohio Laws 169, 120 Ohio Laws 130, 124 Ohio Laws 42, 127 Ohio Laws 274, 128 Ohio Laws 1049, 129 Ohio Laws 1330, 130 Ohio Laws 110, 136 Ohio Laws Pt. II 3618, 137 Ohio Laws Pt. II 2460, 137 Ohio Laws Pt. II 3641, 138 Ohio Laws (Sub. H. B. No. 1), 138 Ohio Laws (Am. Sub. H. B. No. 204), 138 Ohio Laws (Am. Sub. H. B. No. 900), 138 Ohio Laws (Am. Sub. H. B. No. 1237), 138 Ohio Laws (Am. Sub. S. B. No. 403), 138 Ohio Laws (Sub. H. B. No. 1017).

removal at the *end* of the probationary period. The distinction serves to point out a historical dichotomy in legislative policy regarding probationary employees. This policy affords a probationary employee the criteria for his removal and the full appeal rights of a tenured employee at the earlier stages of public employment. Thus, probationary employees may receive a fair trial on the job and have "an opportunity to demonstrate their ability and competence in their job positions." *Hill* v. *Gatz* (1979), 63 Ohio App. 2d 170, 173-174.[2] On the other hand, at the later stages of probationary employment, the interest of the appointing authority in maintaining a satisfactory and competent work force comes into play, and discretionary removal is allowed.

This historical legislative balancing of interests through a two-stage probationary process has been carried over into the present R. C. 124.27, which provides: " * * * If the service of the probationary employee is unsatisfactory, he may be removed or reduced at any time during his probationary period after completion of sixty days or one-half of his probationary period, whichever is greater. If the appointing authority's decision is to remove the appointee, his communication to the director shall indicate the reason for such decision. Dismissal or reduction may be made under provisions of section 124.34 of the Revised Code during the first sixty days or first half of the probationary period, whichever is greater." This section

---

[2] R. C. 124.34 provides that "[t]he tenure of every officer or employee in the classified service of the state * * * shall be during good behavior and efficient service and no such officer shall be reduced in pay or position, suspended, or removed, except as provided in section 124.32 of the Revised Code, and for incompetency, inefficiency, dishonesty, drunkenness, immoral conduct, insubordination, discourteous treatment of the public, neglect of duty, violation of such sections or the rules of the director of administrative services or the commission, or any other failure of good behavior, or any act or other acts of misfeasance, malfeasance, or nonfeasance in office." This section further provides that the appointing authority must provide the employee with a copy of the order of removal, which must state the reasons for removal. Thereafter, within ten days of the filing of the removal order, the employee may file a written appeal with the State Personnel Board of Review.

Either appointing authority or employee may appeal from a decision of the State Personnel Board of Review to the Court of Common Pleas of the county in which the employee resides. The question of the jurisdiction of the Court of Appeals for Franklin County to hear this cause was not raised by either party and, since appellee's county of residence is not clear from the record, we express no opinion thereon.

continues an unbroken legislative policy of nearly 70 years that no appeal shall be provided from a removal other than at a specified stage in the probationary period.

Appellee contends that affirmance is compelled by *State, ex rel. Kendrick,* v. *Masheter* (1964), 176 Ohio St. 232. In *Masheter* this court held that R. C. 143.012[3] (predecessor to R. C. 124.03[B] ) provided jurisdiction to the State Personnel Board of Review to hear appeals by classified civil service employees from layoff decisions of appointing authorities. This argument fails on two grounds.

First, the statutory scheme in effect when *Masheter, supra,* was decided did not include any specific language concerning appeal from layoffs. Thus, we turned to the general provisions of R. C. 143.012 to determine whether such an appeal was intended by the General Assembly. Given the general requirement that an appeal be provided, and noting the absence of any specific provision denying an appeal, we concluded that such an appeal was contemplated. That conclusion was necessary in order to accomplish the legislative plan of R. C. Chapter 143 and to avoid an absurd result. *Id.,* at page 234.

No such difficulty arises here. The General Assembly specifically provided in R. C. 124.27 a two-tiered scheme for probationary removal and appeal. These specific provisions control over the more general language of R. C. 124.03(B). R. C. 1.51. This case is distinguishable, then, from *Masheter* in that R. C. Chapter 143 provided no specific provision concerning appeal from layoff, whereas R. C. Chapter 124 does specifically address appeal from probationary removal. There is no necessity in the case *sub judice* to revert to the general statute to effectuate the legislative scheme.

Secondly, construction of R. C. 124.27 so as to provide an appeal from second-half probationary removals would result in

---

[3] R. C. 143.012 provided:

"The state personnel board of review shall exercise the following powers and perform the following duties of the department of state personnel:

"(A) Hear appeals, as provided by law, of employees in the classified state service from final decisions of appointing authorities * * * relative to reduction in pay or position, layoff, suspension, discharge, assignment or reassignment to a new or different position classification: the board may affirm, disaffirm, or modify the decisions of the appointing authorities * * * and its decision is final * * * ." (128 Ohio Laws 1050.)

absurd consequences clearly sought to be avoided by the General Assembly. The granting of such an appeal, without tying it into the procedural steps required by R. C. 124.34, would create different statutes of limitation for appeal, different records for review, and varying appeal rights from decisions of the State Personnel Board of Review for the two categories of probationary removal. There is no support in R. C. Chapter 124 for this anomalous situation and we decline to impose it through an act of judicial legislation.[4]

Furthermore, the *Masheter* decision placed reliance on the administrative interpretation of the statute in question. *Id.*, at page 235. Accordingly, we note that Ohio Adm. Code 124-1-06 is in accord with our view of R. C. 124.27.[5]

Our decision here does not leave second-half probationary employees subject to the unfettered whim and caprice of appointing authorities. Abuse of the discretion granted to those having the power of removal may be redressed pursuant to R. C. 124.56. However, any further right of appeal by second-half probationary employees must await legislative action.

The second question presented is whether the due process clause of the Fourteenth Amendment to the United States Constitution compels Ohio to accord a hearing to a civil service employee removed during the second half of her probationary period. We conclude that the Constitution does not so require.

"The requirements of procedural due process apply only to the deprivations of interests encompassed by the Fourteenth

---

[4] Appellee also argues that *State, ex rel. Kendrick,* v. *Masheter* (1964), 176 Ohio St. 232, implicitly overrules *State, ex rel. Clements,* v. *Babb* (1948), 150 Ohio St. 359, because the relevant portion of the predecessor statute to R. C. 143.012, G. C. 486-7, was not construed in *Babb, supra,* whereas R. C. 143.012 was construed in *Masheter, supra.* G. C. 486-7, in part, provided:

"Sixth: Hear appeals from the decisions of appointing officers of persons in the classified service, who have been reduced in pay or position, laid off, suspended, discharged or discriminated against by such appointing authority;" (106 Ohio Laws 404.)

It was unnecessary for *Babb, supra,* to construe paragraph six of G. C. 486-7 because G. C. 486-13 provided specific language applicable to those facts and thus controlled over the more general section.

[5] Ohio Adm. Code 124-1-06 provides:

"The board has no jurisdiction over removals or reductions in the second half of a probationary period except to determine whether the appointing authority has complied with the rules governing such actions."

Amendment's protection of liberty and property." *Board of Regents* v. *Roth* (1972), 408 U. S. 564, 569. Whether an interest subject to procedural due process exists is determined by an examination of the nature of the interest at stake. *Id.,* at page 571. More specifically, Fourteenth Amendment procedural protection is extended to those "interests that a person has already acquired in specific benefits." *Id.,* at page 576.

The United States Supreme Court has further elucidated those attributes of the property interests[6] protected by procedural due process:

" * * * To have a property interest in a benefit, a person clearly must have more than an abstract need or desire for it. He must have more than a unilateral expectation of it. He must, instead, have a legitimate claim of entitlement to it. * * *

"Property interests, of course, are not created by the Constitution. Rather, they are created and their dimensions are defined by existing rules or understandings that stem from an independent source such as state law—rules or understandings that secure certain benefits and that support claims of entitlement to those benefits." *Id.,* at page 577.

Thus, although the lack of a contractual or tenure right to continued or re-employment would not, taken alone, defeat a Fourteenth Amendment claim, *Perry* v. *Sindermann* (1972), 408 U. S. 593, a legitimate claim of entitlement must be shown to accord procedural due process to appellee. This appellee has not presented. Absent from the record is any evidence of "rules or mutually explicit understandings" to support her claim. *Id.,* at page 601. Nor does the statute, R. C. 124.27, provide any support for appellee's position. This section explicitly provides that "no appointment or promotion is final until the appointee has satisfactorily served his probationary period." Moreover, it is virtually axiomatic that there is no constitutionally protected right to public employment. *Orr* v. *Trinter* (C.A. 6, 1971), 444 F. 2d 128, 133; *State, ex rel. Trimble,* v. *State Bd. of Cosmetology* (1977), 50 Ohio St. 2d 283; *Fuldauer*

---

[6] Appellee has asserted no claim based on deprivation of a liberty interest protected by the Fourteenth Amendment. Accordingly, we address ourselves only to her claim of denial of a property right.

v. *City of Cleveland* (1972), 32 Ohio St. 2d 114; *State, ex rel. Gordon,* v. *Barthalow* (1948), 150 Ohio St. 499.

Appellee also suggests that *Goss* v. *Lopez* (1975), 419 U. S. 565, compels re-examination of the *Roth-Sindermann* doctrine as it affects probationary public employment.[7] *Goss* v. *Lopez* held that procedural due process attaches to suspensions from public schools where entitlement to education is guaranteed by statute. The United States Supreme Court has not yet equated the interest in public education with an expectation of continued public employment beyond the probationary period. For the aforementioned reasons we decline to do so, and hold that probationary civil service employment does not constitute a legitimate claim of entitlement to be accorded procedural due process under the Fourteenth Amendment.

Accordingly, the judgment of the Court of Appeals is reversed.

*Judgment reversed.*

CELEBREZZE, C. J., SWEENEY, LOCHER, HOLMES, C. BROWN and KRUPANSKY, JJ., concur.

---

[7] For a thoughtful analysis of the *Roth-Sindermann* doctrine in light of *Goss* v. *Lopez* (1975), 419 U. S. 565, see Johnson, Probationary Government Employees and the Dilemma of Arbitrary Dismissals. 44 Univ. of Cinn. L. Rev. 698, 707-713.