951 F.2d 348
 NOTICE: Sixth Circuit Rule 24(c) states that citation of unpublished dispositions is disfavored except for establishing res judicata, estoppel, or the law of the case and requires service of copies of cited unpublished dispositions of the Sixth Circuit.
Dargan BURNS, III, Plaintiff-Appellant,
v.
GREATER CLEVELAND REGIONAL TRANSIT AUTHORITY, Defendant-Appellee.
 No. 91-3185.
 United States Court of Appeals, Sixth Circuit.
 Dec. 19, 1991.
 
 Before RALPH B. GUY, JR. and BOGGS, Circuit Judges, and McRAE, Senior District Judge.*
 PER CURIAM.
 
 
 1
 Dargan Burns, III (Burns) brought this action against the Greater Cleveland Regional Transit Authority and three of its employees (collectively referred to as RTA) after he was terminated from his position as a Senior Auditor for RTA. Burns originally filed his lawsuit in the Court of Common Pleas of Cuyahoga County, Ohio, raising multiple state law claims and a federal claim under 42 U.S.C. § 1983 alleging that RTA had deprived him of his due process rights secured under the Fourteenth Amendment to the United States Constitution.
 
 
 2
 RTA removed the action to federal court and moved for summary judgment on plaintiff's due process claim on the ground that Burns was a probationary employee at the time he was terminated and, as such, he did not have a property interest in his position with the RTA. Burns opposed RTA's motion on the ground that issues of fact remain as to whether his six-month probational period had expired prior to his discharge. The district court granted RTA's motion and remanded the case to the Cuyahoga County Court of Common Pleas.
 
 FACTS
 
 3
 Burns actually started work for RTA on Monday, November 27, 1989. His official notice form stated that his appointment was effective on Sunday, November 26, 1989, which was also the date from which his seniority would have been calculated.
 
 
 4
 Before starting his employment, Burns was required to complete and sign an application form which provided in part that he should "please read carefully the following condition of employment":
 
 
 5
 In the event of my employment, I agree to abide by all present and subsequently issued rules of the Authority.
 
 
 6
 At the time that Burns was hired, RTA's Merit System Rules provided:
 
 
 7
 7.5: Probation. All original and promotional appointments shall be for a probationary period of not to exceed six months and no appointment or promotion shall be deemed finally made until the appointee has satisfactorily served his probationary period. At any time before the end of the probationary period, the appointing authority shall transmit to the personnel director a record of the employee's service and if such service has been unsatisfactory, the employee may, with the approval of the personnel director be removed or reduced without restriction.
 
 
 8
 During Burns' probationary period, this rule was restated in a personnel manual in February 1990, but the substance of the regulation governing probationary employees remained unchanged.
 
 The personnel manual stated:
 
 9
 All employees shall serve a six-month probationary period in each new position held. Prior to the completion of the probationary period, the Department head shall evaluate the employee's performance. If the performance is deemed unsatisfactory, the employee may be removed or demoted with the approval of the Assistant General Manager--Human Resources.
 
 
 10
 Based upon either his actual date of commencing work, November 27, 1989, or his effective appointment date, November 26, 1989, his six-month probation period continued until at least the end of May 25, 1990.
 
 
 11
 From the time of his employment, Burns was under the supervision of the defendant-appellee Loretta Bakr, the Director of Internal Audit of RTA (Bakr). As early as March of 1990, Bakr conferred with Mary Jo Laporte, the Assistant General Manager--Human Resources, concerning the performance of Burns. On May 25, 1990, after Laporte's return from a seminar, Bakr, acting in accordance with the Personnel Policies and Procedures Manual (Personnel Manual), delivered a recommendation with supporting information, that Burns be dismissed from his probationary position for unsatisfactory performance. Laporte approved Bakr's discharge recommendation on the afternoon of May 25.
 
 
 12
 On that afternoon, Burns left work shortly after 5:00 p.m. Bakr tried to find him at the office in order to give him his notice of termination, but Burns had already left. Bakr then arranged for a courier service to deliver the notice to Burns' residence that day. In addition, Bakr mailed another copy of the letter by certified mail the next morning; however, it was not delivered and signed for by Burns until the following Tuesday, after Memorial Day weekend. On that same morning, Burns reported to work, and Bakr provided him with another copy of his letter of termination.
 
 SUMMARY JUDGMENT
 
 13
 We review a grant of summary judgment de novo, and all facts and inferences are to be viewed in the light most favorable to the non-moving party. White v. Turfway Park Racing Ass'n, Inc., 909 F.2d 941, 943 (6th Cir.1990). Summary judgment is proper if the evidence shows that "there is no genuine issue as to a material fact and that the moving party is entitled to judgment as a matter of law." Fed.R.Civ.P. 56. "By its very terms, this standard provides that the mere existence of some alleged factual dispute between the parties will not defeat an otherwise properly supported motion for summary judgment; the requirement is that there is no genuine issue of material fact." Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 247-48 (1986); Street v. J.C. Bradford & Co., 886 F.2d 1472, 1478 (6th Cir.1989).
 
 
 14
 The procedural due process guarantees of the United States Constitution apply to life, liberty and property interests protected by the Fourteenth Amendment. Bd. of Regents v. Roth, 408 U.S. 564, 569 (1972). The right to continued public employment can, in appropriate circumstances, be a property interest protected by the Fourteenth Amendment. Cleveland Bd. of Educ. v. Loudermill, 470 U.S. 532, 538 (1985). That property interest is created by "existing rules and understandings that stem from an independent source such as state law." Roth, 408 U.S. at 577. Thus, Burns' claim to an entitlement to continued employment with RTA turns on state law. Bishop v. Wood, 426 U.S. 341, 344 (1976).
 
 
 15
 In Ohio, a probationary public employee does not have a claim of entitlement to continued employment. Walton v. Montgomery County Welfare Dep't, 69 Ohio St.2d 58; 430 N.E.2d 930, 935 (Ohio 1982). An appointment to a position of public employment is not intended to guarantee continued employment beyond the end of the probationary period. State ex rel. Krejci v. Civil Serv. Comm'n, 17 Ohio St.3d 140, 143, 478 N.E.2d 239 (Ohio 1985). Probationary public employees, therefore, are not entitled to the guarantees of procedural due process before being dismissed. Walton, 69 Ohio St.2d at 60; Dillon v. City of Macedonia, 43 Ohio App.3d 17, 19, 538 N.E.2d 1085 (Ohio Ct.App.1988). A public employee obtains a legitimate claim of entitlement to continued employment only after satisfactory completion of the probationary period. Walton, 69 Ohio St.2d at 64.
 
 
 16
 The asserted disputed facts are either not genuinely disputed, or are not material as they have been determined as a matter of law, under a proper interpretation of the written conditions of the probationary contract.
 
 
 17
 One of the claims of Burns is that he did not know the term of the probationary period and the requirements upon RTA for discharging probationary employees. Burns more specifically claims that he had not seen and therefore did not know the provisions of Rule 7.5 of the Merit System Rules, supra, nor the provisions of the Personnel Manual applicable to probationary employees published during his probationary period, supra. As previously indicated, Burns signed an application for employment in which he agreed "to abide by all present and subsequently issued rules of" RTA. Clearly he was bound by the Merit System Rules and Personnel Manual even if he had not read them; therefore he was subject to "a probationary period not to exceed six months."
 
 
 18
 Burns alternatively contends that there is a genuine issue of fact on the question whether the six-month period was actually 180 days. In support, he relies upon an affidavit of a former personnel director concerning past practices. This does not raise a question of fact because it is contrary to a clear interpretation of the written terms of the employment contract in force during the probationary period of Burns, which includes May 25, 1990.
 
 
 19
 Burns also alternatively contends that his six-month probationary period ended at 5:00 p.m., the end of the business day, if his probationary period is determined to have ended on May 25, 1990. He further contends that he did not personally receive notice of his termination. Neither the Merit System Rules nor the Personnel Manual provide for the probationary period to end at a specific time of day. Similarly, neither provides for a particular form and place of delivery of the notice of termination. They do provide that the determination to remove a probationary employee must be made and approved by the Personnel Director/Assistant General Manager--Human Resources by the end of the probationary period. That was done, and a notice of termination was sent to the residence of Burns by commercial courier on May 25, 1990, even though not specifically required by the Merit System Rules and the Personnel Manual.
 
 
 20
 For the reasons stated above, we affirm the ruling of the district court granting summary judgment as to Count Two of the Complaint and remanding the remainder of the case to the Court of Common Pleas of Cuyahoga County, Ohio.
 
 
 
 *
 The Honorable Robert M. McRae, Senior U.S. District Judge for the Western District of Tennessee, sitting by designation