BASHFORD, APPELLANT, *v.* CITY OF PORTSMOUTH, APPELLEE.

[Cite as Bashford *v.* Portsmouth (1990), 52 Ohio St. 3d 195.]

(No. 89-654—Submitted April 18, 1990—Decided July 3, 1990.)

196

*Mowery, Brown & Blume, T. Kevin Blume* and *J. Rick Brown,* for appellant.

*Richard T. Schisler,* city solicitor, for appellee.

HOLMES, J. We are asked to determine in this case whether appellant was, at the time of his termination from appellee's employ, a probationary employee. If so, we must then determine whether the manner of his termination was governed by state and local law rather than the just cause termination procedures of the collective bargaining agreement in force at the time of his termination. We answer both queries in the affirmative, for the reasons which follow, and thus affirm the judgment of the court of appeals.

We begin our discussion by observing that, "on matters of wages, hours or terms and conditions of employment, a collective bargaining agreement entered into pursuant to R.C. Chapter 4117 prevails over a conflicting law unless such law falls within one

of the exceptions listed in R.C. 4117.10(A)." *State, ex rel. Rollins,* v. *Cleveland Hts.-University Hts. Bd. of Edn.* (1988), 40 Ohio St. 3d 123, 532 N.E. 2d 1289, paragraph one of the syllabus; *State, ex rel. Brown,* v. *Milton-Union Exempted Village Bd. of Edn.* (1988), 40 Ohio St. 3d 21, 531 N.E. 2d 1297; *Jurcisin* v. *Cuyahoga Cty. Bd. of Elections* (1988), 35 Ohio St. 3d 137, 143, 519 N.E. 2d 347, 352-353.[2] However, R.C. 4117.10(A) also provides, in pertinent part:

"* * * Where no agreement exists or where an agreement makes no specification about a matter, the public employer and public employees are subject to all applicable state or local laws or ordinances pertaining to the wages, hours, and terms and conditions of employment for public employees. * * *"

In the present case, two matters involving the terms and conditions of employment are at issue: (1) the probationary status of an employee — a matter about which the bargaining agreement herein makes *no* specification; and (2) the right of an employee to a pre-termination hearing and to termination only upon just cause — matters which are specified in the bargaining agreement here. Inasmuch as "the probationary period is for the benefit of the appointing authority to aid in the determination of merit and fitness for civil service employment, * * *" *Walton* v. *Montgomery Cty. Welfare Dept.* (1982), 69 Ohio St. 2d 58, 59, 23 O.O. 3d 93, 94, 430 N.E. 2d 930, 932, such that the General Assembly has granted appointing authorities a degree of leeway in the dismissal of probationary employees, *id.,* we hold that the lack of specificity regarding probationary employees in the instant collective bargaining agreement prevents application of that agreement's termination procedures to all such probationary employees.

R.C. 124.27 provides, in pertinent part:

"* * * [O]riginal appointments to a police department as a policeman or policewoman, or to a fire department as a fire fighter * * * shall be for a probationary period of one year, and no appointment or promotion is final until the appointee has satisfactorily served his probationary period. Service as a provisional employee in the same or similar class shall be included in the probationary period. If the service of the probationary employee is unsatisfactory, he may be removed or reduced at any time during his probationary period after completion of sixty days or one-half of his probationary period, whichever is greater. If the appointing authority's decision is to remove the appointee, his communication to the director shall indicate the reason for such decision. Dismissal or reduction may be made under provisions of section 124.34 of the Revised Code during the first sixty days or first half of the probationary period, whichever is greater. * * *"

Municipal policemen in Ohio must serve a one-year probationary period and, by definition, no appointment as a policeman is final until such probationary period has been satisfactorily served. R.C. 124.27 further provides a

---

[2] R.C. 4117.10(A) was enacted effective April 1, 1984. 140 Ohio Laws, Part I, 336, 367. The agreement at issue herein was signed on April 20, 1984, although the record indicates that the pay provisions of this new contract were applied retroactively to January 1984. Thus, we must determine the effect of R.C. 4117.10(A) upon the rights and duties of the parties herein. Cf. *Brown, supra,* at 25-27, 531 N.E. 2d at 1301-1303.

two-tiered scheme for probationary removal and appeal, whereby a policeman dismissed during the *first six months* of his probationary period enjoys the privileges of a tenured employee, in that he may be dismissed only for cause as defined in R.C. 124.34, and may appeal such dismissal to the municipal civil service commission. Policemen dismissed during the *last* six months of their probationary period, however, may be removed at the appointing authority's discretion, with no right of appeal.[3] *Walton, supra* (lack of a hearing or appeal during the second half of the probationary period not unconstitutional). "[A]t the later stages of probationary employment, the interest of the appointing authority in maintaining a satisfactory and competent work force comes into play, and discretionary removal is allowed." *Id.* at 61, 23 O.O. 3d at 95, 430 N.E. 2d at 933.

The rules and regulations of the Portsmouth Municipal Civil Service Commission ("PMCSC") provide even greater rights to probationary employees than those provided by state law.[4] PMCSC Section 2, Rule XII provides a one-year probationary period for Portsmouth police officers, which appointment, as with state law, is not "deemed finally made until the appointee has satisfactorily served his probationary period."[5] The appointing officer may, in his discretion, remove any "unsatisfactory" probationary employee within ten days before the end of the employee's probationary period, simply upon the approval of the commission. *Id.* at Section 3. PMCSC Section 4, Rule XII provides that all probationary employees may be removed for cause at any time, provided such employee is given formal notice of the dismissal. Unlike state law, Section 4 also provides that *all* dismissed employees "shall have the right to appeal to the Commission." However, a pre-termination hearing is not provided for any probationary police officer under either state or local law, since the appointment is expressly not final until satisfactory completion of probation, and thus the officer has no recognized property interest in continued employment which would trigger a hearing requirement. See *Walton, supra.*

In the present case, appellant served approximately four months and three weeks as a probationary patrolman before he was laid off in

---

[3] But, see, R.C. 124.56.

[4] PMCSC Section 1, Rule XII provides:

"Purpose of Probationary Period: The probationary period is an essential part of the examination and selection process, and is provided to give the appointee an opportunity to demonstrate his aptitude[,] fitness, and ability to meet the performance standards of the division. The appointee who successfully completes his probationary period will receive his permanent appointment, subject to the conditions specified in the Civil Service Rules and Regulations."

[5] Appellant's initial hiring letter from appellee, dated June 22, 1981, stated that he was being hired "for a probationary period of six months. * * *'" This statement was contrary to both state and local law in effect on that date, and such error is thus of no effect. Prior local law, the Personnel Rules and Regulations for the City of Portsmouth, Rule 3.9, effective June 10, 1975, and relied on by appellant here, was superseded by the rules and regulations of the Portsmouth Municipal Civil Service Commission. In any event, the Portsmouth City Charter, Section 63, provides that all rules of the civil service commission are subject to state law, which mandates a one-year probation period for police officers. R.C. 124.27.

November 1981. Twenty-one months later, he was recalled and served another eleven months before being dismissed by appellee. Appellant first argues that he was entitled to be recalled to his former position as a matter of right, and thus his probationary period should not have started anew.

PMCSC Section 3, Rule XV, upon which appellant relies, is inapposite. While that rule does provide for the creation of a layoff list and automatic re-appointment of employees to probationary permanent positions, see, also, R.C. 124.327(A), the rule neither refers to nor affects the calculation of the probationary period, and appellant does not cite any other Portsmouth Municipal Civil Service Commission rule in support of his position. Rather, R.C. 124.327(H) governs this situation:

"Any employee reinstated or reemployed under this section shall not serve a probationary period upon reinstatement or reemployment except that an employee laid off during an original or promotional probationary period *shall begin a new probationary period.*" (Emphasis added.)

Upon reinstatement to his former probationary position in August 1983, appellant was required to begin a new one-year probationary period, pursuant to state law, and he was so informed. Moreover, appellant had served nearly eleven months of his probation when, on June 26 and 29, 1984, he was given formal written notice of his termination. He thereafter requested and was afforded a hearing on the merits upon appeal of his dismissal to the municipal civil service commission. Appellant was clearly a probationary employee at the time of his termination, and appellee complied with state and local laws in effecting his dismissal.

Finally, with regard to his probationary status, appellant argues that Section 1, Article XXVII of the April 1984 collective bargaining agreement prevails over state law, and provides that his probationary status came to an end after one year of total service with appellee. We cannot agree. Section 1, Article XXVII of the agreement provides, in part:

"ARTICLE XXVII. PAY GRADE AND JOB DESCRIPTION.

"Section 1. The following job positions and method of reaching the classification are hereby established:

"Pay Range 1. Probationary Patrolman — from date of hire up to one year of employment with Portsmouth Police Department.

"Pay Range 2. Rookie Patrolman — from one year of service to two years."

This section deals solely with the rates of pay available to police officers based on length of service or on examination. It has no relation to or effect on the length of a recalled employee's probationary period. Indeed, there are no provisions in this collective bargaining agreement which *specifically* address the issue of length of probationary status in any fashion, much less the probationary status of a police officer laid off and then reinstated in the middle of his one-year probationary period. "* * * R.C. 4117.10(A) clearly requires that the parties be subject to all laws pertaining to wages, hours and terms and conditions of employment when no specification as to such a matter is made." *State, ex rel. Clark,* v. *Greater Cleveland Regional Transit Auth.* (1990), 48 Ohio St. 3d 19, 23, 548 N.E. 2d 940, 943-944. That one year of total service and promotion to the pay range for "rookie patrolman" did not constitute the end of his probationary period was made unambiguously clear to appellant upon his signing the payroll change form in March 1984.

This form clearly stated that his probationary period continued until August 1, 1984, and that his classification changed from "Probationary Ptl. Step 1 to same Step 2," *not* from probationary patrolman to rookie patrolman.

Appellant next argues that, irrespective of his probationary status, the April 1984 collective bargaining agreement granted him the right not to be dismissed except for just cause, following written notice and a hearing. In support of his argument appellant cites the following provisions of the agreement:

"ARTICLE IV. RECOGNITION.

"Section 1. The City agrees to and does hereby recognize the Fraternal Order of Police, Scioto Lodge #33, Inc., and its designated agents or representatives as the sole and exclusive bargaining agent on behalf of the employees set forth below with respect to wages, hours, fringe benefits, working conditions and other conditions of employment. There shall be two bargaining units as follows:

"(1) All sworn officers employed by the City below the rank of Sergeant.

"(2) All sworn officers employed by the City holding the rank of Sergeant and above, excluding the Chief of Police, one Captain, and all civilian personnel. ·

"* * *

"ARTICLE XII. CORRECTIVE ACTION AND RECORDS.

"Section 1. Corrective Action for Cause. No bargaining unit member will be reduced in pay or position, suspended, removed or reprimanded except for just cause."

Obviously, the collective bargaining agreement set forth an all-inclusive definition of "bargaining unit member," and it is apparently assumed by the parties that probationary police officers are "sworn officers employed by the City." Equally obvious, however, is the stark absence of *any* reference whatsoever to the status of probationary employees with respect to corrective action or investigation in this collective bargaining agreement. Realizing this, appellant argues that the all-inclusive, general definition of "bargaining unit" members contained in the agreement necessarily defined his employment rights within the terms of the contract. This court recently rejected an analogous "all inclusive" argument in *State, ex rel. Clark, supra.*

In *Clark,* the appellant transit authority argued "that vacation leave entitlement is comprehensively addressed in the parties' collective bargaining agreements and that pursuant to R.C. 4117.10(A), the provisions of the agreements supersede or prevail over any and all conflicting laws," such as the prior service credit provided in R.C. 9.44. *Id.* at 21, 548 N.E. 2d at 942. Appellant argued that because the subject of paid vacation time was included in the agreements, it could be assumed that all aspects of the subject were considered in negotiating the agreements. See, also, *id.* at 24, 548 N.E. 2d at 944-945 (Holmes, J., dissenting).

A majority of this court rejected this position, noting that "[n]ot *specifically* addressed by the collective bargaining agreements in question is the prior service credit an individual is entitled to receive pursuant to R.C. 9.44." (Emphasis *sic.*) *Id.* at 22, 548 N.E. 2d at 943. Collective bargaining negotiations involve a process whereby two parties come to the table, each with a number of rights and obligations established by state and local laws, which rights and obligations are placed on the table and either bartered away or retained to the satisfaction of both parties. As the *Clark* court explained:

"Simply stated, in their new and most recent employment with the GCRTA, appellees brought with them pockets filled with benefits to which they are entitled under Ohio law. The collective bargaining agreements failed to specifically take the benefits provided by R.C. 9.44 from appellees and, thus, they retained their entitlement to them." *Id.* at 23, 548 N.E. 2d at 943.

The *Clark* majority thus strictly construed the "no specification" language of R.C. 4117.10(A). "In the case at bar, no conflict exists between R.C. 9.44 and the provisions of the collective bargaining agreements. The agreements at issue did not specifically address the matter of prior service credit for purposes of computing vacation leave. R.C. 4117.10(A) clearly requires that the parties be subject to all laws pertaining to wages, hours and terms and conditions of employment when no specification as to such a matter is made." *Id.*

Similarly here, appellee brought to the negotiating table the time-tested benefits of determining the fitness of new employees by having them serve a probationary period prior to making their appointment final. "Since 1913, Ohio has provided for a probationary period for civil service employees. The requirement of a period of probationary service has been held to be part of a valid statutory scheme implementing Section 10, Article XV of the Ohio Constitution. *State, ex rel. Clements,* v. *Babb* (1948), 150 Ohio St. 359, 368-369. * * *" *Walton, supra,* at 59, 23 O.O. 3d at 94, 430 N.E. 2d at 932. The collectively bargained agreement at issue here failed to specifically take the benefits of this procedure, provided in R.C. 124.27 and the rules and regulations of the Portsmouth Municipal Civil Service Commission, from appellee. This court cannot, following *Clark, supra,* infer from the general language of this agreement that the parties intended to eliminate probationary service by new police officers, as provided by state and local law. Thus, due to the absence of a direct conflict, we hold that such laws continue to govern the conduct of the parties.

Because appellee complied with applicable state and local law in dismissing appellant, who was at the time of his dismissal a probationary police officer, and because the collective bargaining agreement at issue herein makes no specification regarding probationary service to the contrary, we accordingly affirm the judgment of the court of appeals.

*Judgment affirmed.*

MOYER, C.J., WRIGHT and RESNICK, JJ., concur.

SWEENEY, DOUGLAS and H. BROWN, JJ., dissent.

DOUGLAS, J., dissenting. In the case at bar, FOP Scioto Lodge No. 33 and the city of Portsmouth were parties to a collective bargaining agreement entered into pursuant to R.C. Chapter 4117. The agreement provides in relevant part:

"ARTICLE IV. RECOGNITION.

"Section 1. The City agrees to and does hereby recognize the Fraternal Order of Police, Scioto Lodge #33, Inc., and its designated agents or representatives as the sole and exclusive bargaining agent on behalf of the employees set forth below with respect to wages, hours, fringe benefits, working conditions and other conditions of employment. *There shall be two bargaining units as follows*:

"(1) *All sworn officers employed by the City* below the rank of Sergeant.

"(2) All sworn officers employed by the City holding the rank of

Sergeant and above, excluding the Chief of Police, one Captain, and all civilian personnel.

"* * *

"ARTICLE XII. CORRECTIVE ACTION AND RECORDS.

"Section 1. Corrective Action for Cause. *No bargaining unit member will be* reduced in pay or position, suspended, *removed* or reprimanded *except for just cause.*" (Emphasis added.)

Both parties to this appeal apparently concede that Bashford was a sworn police officer employed as a patrolman by the city of Portsmouth. As such, Bashford was a member of the bargaining unit defined in Section 1(1), Article IV of the agreement. Pursuant to Section 1, Article XII of the agreement, no bargaining unit member may be removed (or terminated from employment) except for just cause. Hence, Bashford could not be removed except for just cause under the terms of the agreement.

Conversely, R.C. 124.27 provides in relevant part that:

"* * * [O]riginal appointments to a police department as a policeman or policewoman * * * shall be for a probationary period of one year, and no appointment or promotion is final until the appointee has satisfactorily served his probationary period. Service as a provisional employee in the same or similar class shall be included in the probationary period. If the service of the probationary employee is unsatisfactory, he may be removed or reduced at any time during his probationary period after completion of sixty days or one-half of his probationary period, whichever is greater. * * *"

Bashford was a probationary employee in the second half of his probationary period at the time of his removal. Accordingly, under the terms of R.C. 124.27, Bashford could

have been removed from his position with the city without just cause.

Given the readily apparent conflict between the agreement and R.C. 124.27, R.C. 4117.10(A) provides in pertinent part that:

"An agreement between a public employer and an exclusive representative entered into pursuant to Chapter 4117. of the Revised Code governs the wages, hours, and terms and conditions of public employment covered by the agreement. * * * Where no agreement exists or where an agreement makes no specification about a matter, the public employer and public employees are subject to all applicable state or local laws or ordinances pertaining to the wages, hours, and terms and conditions of employment for public employees. * * * Chapter 4117. of the Revised Code prevails over any and all other conflicting laws, resolutions, provisions, present or future, except as otherwise specified in Chapter 4117. of the Revised Code or as otherwise specified by the general assembly. * * *"

Under R.C. 4117.10(A), the provision of the collective bargaining agreement requiring just cause for Bashford's removal prevails over R.C. 124.27, which contains no such requirement. The conflict between the agreement and R.C. 124.27 is clear. On the one hand, the agreement requires just cause for removal of a bargaining unit member (including Bashford). On the other hand, R.C. 124.27 permits Bashford's removal without just cause. The majority relies upon *State, ex rel. Clark,* v. *Greater Cleveland Regional Transit Auth.* (1990), 48 Ohio St. 3d 19, 548 N.E. 2d 940, in concluding that no conflict exists between the provisions of the agreement and R.C. 124.27. However, the majority's conclusions are not supported by our deci-

sion in *Clark,* or by the plain and unambiguous language of R.C. 4117.10(A).

In *Clark,* vacation eligibility provisions contained in two collective bargaining agreements provided for the *future* accrual of paid vacation days based upon an employee's continuous service with the transit authority. The agreements did not, however, address the *prior* service vacation credit that the employees were entitled to receive under R.C. 9.44. R.C. 9.44 and the vacation eligibility provisions contained in the collective bargaining agreements could be read together giving complete effect to both the law and the agreements. As such, we held that no conflict existed between R.C. 9.44 and the terms of the collective bargaining agreements and, under R.C. 4117.10 (A), the agreements did not preclude application of R.C. 9.44. *Id.* at 23, 548 N.E. 2d at 943-944. In doing so, we rejected the argument that by including a provision in the collective bargaining agreements for *future* vacation only, the parties were not subject to what the law required regarding *past* vacation credits. This "all inclusive" argument failed because the parties to the agreements made no specification regarding *prior* service vacation credits (a matter pertaining to wages, hours and terms and conditions of employment) and, thus, R.C. 4117.10 (A) clearly required that the parties be subject to R.C. 9.44.

In the case at bar, R.C. 124.27 and the terms of the collective bargaining agreement are diametrically opposed and cannot be read together. The agreement provides that the bargaining unit is comprised of *"[a]ll* sworn officers employed by the City below the rank of Sergeant." (Emphasis added.) The agreement also provides that *"[n]o* bargaining unit member will be * * * removed * * * except for just cause." (Emphasis added.) As previously discussed, Bashford (a probationary employee) was included in the bargaining unit and, hence, could not be removed except for just cause. R.C. 124.27 would permit Bashford to be removed without just cause. Clearly, a conflict exists and the majority errs in finding an absence of conflict. Further, the just cause provision in the agreement at issue addresses, with specificity, the requirements that probationary employees (like Bashford) be removed only for just cause. Thus, Bashford's "all inclusive" argument must prevail since the contract provisions at issue are all inclusive. The agreement includes *all* employees — not just those who are no longer probationary employees. In my judgment, *all* sworn officers means *all* sworn officers regardless of their probationary or non-probationary status. Because the agreement at issue makes specification about dismissals of all employees in the bargaining unit, the agreement should be enforced as written.

Accordingly, I would reverse the court of appeals and enforce the provisions of the agreement in compliance with the dictates of R.C. 4117.10(A).

SWEENEY and H. BROWN, JJ., concur in the foregoing dissenting opinion.