**MacKNIGHT, Appellant,**

**v.**

**LAKE COUNTY DEPARTMENT OF HUMAN SERVICES, Appellee.**

[Cite as *MacKnight v. Lake Cty. Dept. of Human Serv.* (1995), 107 Ohio App.3d 181.]

Court of Appeals of Ohio,
Tenth District, Franklin County.

No. 95APE02–188.

Decided Oct. 31, 1995.

*Cannon, Stern, Aveni & Loiacono Co., L.P.A., James V. Loiacono* and *Karen Sheppert Johnson,* for appellant.

*Phillip D. Wurster,* for appellee.

PETREE, Judge.

Appellant, Andrea K. MacKnight, appeals from the judgment entered in the Franklin County Court of Common Pleas vacating an order of the State Personnel Board of Review ("SPBR") after finding that the SPBR had no jurisdiction to order the setting of appellant's salary, as such salary is subject to the collective bargaining agreement negotiated between appellee, Lake County Department of Human Services, and the Communications Workers of America ("CWA").

On appeal, appellant presents a single assignment of error:

"The Franklin County Court of Common Pleas as a matter of law erred when it denied jurisdiction to appellant, Andrea K. MacKnight, since the State Personnel Board of Review did have jurisdiction to set appellant's salary on appeal after she exercised her displacement rights."

Appellant held a nonbargaining-unit position as an Income Maintenance Supervisor 1 at the Lake County Department of Human Services. By letter dated June 22, 1992, appellant was informed by the Lake County Board of Commissioners that due to "reorganization for efficient operations and for lack of work" her position was being abolished and she was being laid off effective July 6, 1992. At the time appellant was laid off, her wage rate was $13.57 per hour.[1] The letter also informed appellant of her right to exercise her displacement rights and specified that "[y]ou have the right to displace an Income Maintenance Worker 3 (Provisional) Salary = $6.78 per hour." Appellant exercised her displacement rights and "bumped" into the position of Income Maintenance Worker 3 within the department. Her salary was established at $6.78 per hour pursuant to the existing collective bargaining agreement between appellee and the CWA.

On June 29, 1992, appellant filed a notice of appeal with the SPBR, challenging the abolishment of her position, the computation of retention points as they related to her continuous service with the department, her beginning date of service, and the rate of pay to which she was entitled due to the displacement. However, at the time of the scheduled hearing before the SPBR, appellant decided to appeal only the issue of the rate of pay to which she was entitled due to the displacement.

---

1. The precise hourly wage appellant was paid as an Income Maintenance Supervisor 1 is somewhat unclear. As noted previously, the letter informing appellant of the abolishment of her position refers to her wage rate as $13.57 per hour. Under the "Conclusions of Law" portion of the administrative law judge's report and recommendation, plaintiff's wage is recited as $13.57 per hour. Similarly, the decision by the Franklin County Court of Common Pleas refers to appellant's wage as $13.57 per hour. However, under the "Findings of Fact" portion of the administrative law judge's report and recommendation, appellant's wage is recited as $13.75 per hour. Similarly, in the briefs, both parties refer to appellant's wage as $13.75 per hour.

The matter came on for hearing before the administrative law judge, who recommended that, pursuant to Article 44 of the collective bargaining agreement and Ohio Adm.Code 123:1–41 *et seq.*, appellant should be assigned the pay rate of an Income Maintenance Worker 3, which is the equivalent of or nearest to $13.57, the rate she was paid in her position as Income Maintenance Supervisor 1. The SPBR subsequently adopted the report and recommendation of the administrative law judge and ordered that appellant receive the appropriate rate of pay as of the date she exercised her displacement rights and was placed into the Income Maintenance Worker 3 position.

Appellee appealed the SPBR's order to the Franklin County Court of Common Pleas, which found that the SPBR lacked jurisdiction to set appellant's salary, "since the issue of [MacKnight's] salary was and is subject to the Collective Bargaining Agreement between the [Lake County Department of Human Services] and the Communications Workers of America." Thus, the court reversed the SPBR's decision as being contrary to law. Appellant has timely appealed the common pleas court's judgment.

■■■ Initially, we must determine the parameters of our review of this action. In an administrative appeal, the common pleas court must review the agency's order to determine whether the order is supported by reliable, probative, and substantial evidence and is in accordance with law. The appellate court's role in reviewing the determination of the common pleas court on reliable, probative, and substantial evidence is to determine if the common pleas court abused its discretion. *Hartzog v. Ohio State Univ.* (1985), 27 Ohio App.3d 214, 27 OBR 254, 500 N.E.2d 362. However, on questions of law, the common pleas court does not exercise discretion and the court of appeals' review is plenary. *Univ. Hosp., Univ. of Cincinnati College of Medicine v. State Emp. Relations Bd.* (1992), 63 Ohio St.3d 339, 587 N.E.2d 835, paragraph one of the syllabus.

In order to understand the foundation of appellant's argument, we must examine Articles 39 and 44 of the collective bargaining agreement, R.C. 4117.10(A), and Ohio Adm.Code 123:1–41–11(H).

Article 39, which contains provisions for the establishment of wages, states, in relevant part:

"Section 1.

"From funds available to the Lake County Department of Human Services other than those available through the County general fund, except as already provided through the mandated share formula, the Employer agrees to the following:

"1. Established rates of pay shall be set forth in Appendix D for new hire employees or employees successfully applying for positions in the agency. Em-

ployees successfully applying for a position that is a demotion shall be compensated at the rate established in the wage scales set out in Appendix D. Lateral classification changes will receive the same rate of pay. Employees successfully applying for a promotion shall receive the rate assigned to the classification as set out in Appendix D or a four percent (4%) increase, whichever is greater.

"2. New employees shall be placed at the rate established in Appendix D in the classification they are hired."

Article 44, which addresses layoff and recall procedures, states:

"Section 1.

"Incorporate current State and County policy outlined in Section 123:1–41 *et seq.*

"Section 2.

"Appeals of such procedures shall be processed through the State Personnel Board of Review and shall be the sole and exclusive method of resolving appeals and shall not be arbitrable."

R.C. 4117.10(A), which governs situations concerning conflicts in state law and agreements entered into pursuant to collective bargaining, states, in pertinent part:

"(A) An agreement between a public employer and an exclusive representative entered into pursuant to this chapter governs the wages, hours, and terms and conditions of public employment covered by the agreement. If the agreement provides for a final and binding arbitration of grievances, public employers, employees, and employee organizations are subject solely to that grievance procedure and the state personnel board of review or civil service commissions have no jurisdiction to receive and determine any appeals relating to matters that were the subject of a final and binding grievance procedure. Where no agreement exists or where an agreement makes no specification about a matter, the public employer and public employees are subject to all applicable state or local laws or ordinances pertaining to the wages, hours, and terms and conditions of employment for public employees. * * * "

Finally, Ohio Adm.Code 123:1–41–11(H) states:

"Rate of pay for an employee following displacement. An employee exercising his displacement rights to a position * * * shall be paid according to the pay range assigned to the classification into which the employee displaced * * *. The employee shall be assigned to a rate in the pay range assigned to the new classification which is equivalent or nearest to, but not exceeding, the rate the employee was paid in his prior classification. If the rate the employee was assigned in his prior classification exceeds the highest rate in the pay range

assigned to the new classification the employee will be assigned the highest rate assigned to the new classification."

By the assignment of error, appellant contends that the common pleas court erred in determining that the SPBR did not have jurisdiction to hear her appeal and set her salary in accordance with Ohio Adm.Code 123:1–41–11(H).

Appellant contends that the trial court erred in relying on *Cuyahoga Falls Edn. Assn. v. Cuyahoga Falls City School Dist. Bd. of Edn.* (1991), 61 Ohio St.3d 193, 574 N.E.2d 442. In *Cuyahoga Falls,* the Cuyahoga Falls City School District Board of Education ("board") notified the Cuyahoga Falls Education Association ("association") of its decision to implement a reduction-in-force by means of the nonrenewal of twenty-two limited teaching contracts. At the time, the board and the association were parties to a collective bargaining agreement which contained a reduction-in-force provision. The association argued that the court should construe the reduction-in-force provision narrowly against the board in light of the interpretation given to similar language contained in R.C. 3319.17. In support of their argument, the association relied on a reduction in force case in which there was no evidence of a collective bargaining agreement provision addressing a possible reduction in force; thus, the case was governed solely by R.C. 3319.17. The Supreme Court of Ohio held that, because the collective bargaining agreement in the case before it addressed a possible reduction in force, there was no authority for a narrow construction of the language of the parties' agreement against the board and that the court was bound by R.C. Chapter 4117 to follow the language of the agreement. The court noted:

"[W]hen parties to a collective bargaining agreement have negotiated a provision pertaining to wages, hours, or terms and conditions of employment and there is a conflict either with the express language or the judicial interpretation given to a similar provision of the Revised Code, the interpretation of the agreement prevails." *Id.* at 197, 574 N.E.2d at 445.

Appellant argues that the instant case is more directly on point with *Bashford v. Portsmouth* (1990), 52 Ohio St.3d 195, 556 N.E.2d 477. In that case, a patrolman served approximately five months as a probationary patrolman before being laid off for budgetary reasons. Approximately twenty-one months later, he was recalled to his former position and was informed that his one-year probationary period would begin to run on the date of his recall. The partolman was terminated prior to the expiration of this one-year probationary period. At issue in the case was whether the matter of a probationary employee's termination was governed by state and local law rather than the "just cause" termination procedures of the collective bargaining agreement which was in force at the time of his termination. The Supreme Court of Ohio recognized that on matters of wages, hours or terms and conditions of employment, a collective bargaining

agreement prevails over a conflicting law unless the law falls within one of the exceptions listed in R.C. 4117.10(A). However, the court held that "the lack of specificity regarding probationary employees in the instant collective bargaining agreement prevents application of that agreement's termination procedures to all such probationary employees." Thus, because the collective bargaining agreement made no reference to probationary employees, the general language of the collective bargaining agreement, stating that bargaining unit members could not be removed except for just cause, did not apply to probationary employees; therefore, the matter of his termination had to be governed by state and local law.

In the instant case, it is undisputed that Article 39 of the collective bargaining agreement governs the issue of an employee's wage rate. Although appellant concedes that the position into which she was "bumped" is a bargaining unit position covered by the collective bargaining agreement, she argues that Article 39 does not control the wage rate that she should be receiving in her position as Income Maintenance Worker 3, as that section addresses only wage formulas for new agency employees, employees successfully applying for positions within the agency, and lateral classification changes, but does not address circumstances whereby an employee is displaced into a bargaining unit position as the result of a layoff. According to appellant, because Article 39 contains no provision addressing the issue of wage rate following a displacement, Article 44, which addresses layoffs and recall procedures, controls the instant action and directs that current state and county policies outlined in Ohio Adm.Code 123:1–41 are to be employed. Thus, argues appellant, she should be paid according to the formula set forth in Ohio Adm.Code 123:1–41–11(H). Appellant further argues that, pursuant to Article 44, any appeals of such procedures are to be processed through the SPBR and are not subject to arbitration under the terms of the collective bargaining agreement.

Appellee argues that, pursuant to R.C. 4117.10(A), because appellant was displaced into a bargaining unit position, the terms and conditions outlined in the collective bargaining agreement prevail over any conflicting law. Appellee contends that since Article 39 establishes the salary structure in Appendix D, appellant is bound by that structure and that all disputes arising from the salary structure are to be resolved through the grievance process set forth in Article 8 of the collective bargaining agreement.[2]

2. Article 8, entitled "Grievance Procedure," sets forth the process by which allegations of breach, misinterpretation or improper application of the collective bargaining agreement are resolved. Section 2 states, "The following constitutes the sole and exclusive method for resolving grievances between the parties covered by this Agreement." Section 5 provides for a final and binding arbitration of grievances.

This court agrees with appellee's position. Section 1, paragraph 1 of Article 39 specifically states that "employees successfully applying for a demotion shall be compensated at the rate established in the wage schedule in Appendix D." In the instant case, appellant was advised of her right to exercise her displacement rights and was made aware of the fact that the position into which she would be displaced was one for which the salary was considerably lower than the salary she earned in her former position. Due to the disparity in salary, appellant should have been aware that she was applying for a position considered to be a demotion from her former position. Although faced with limited alternatives, appellant chose to exercise those displacement rights by applying for the demotion. Thus, because the collective bargaining agreement contains a provision addressing a situation where an employee successfully applies for a demotion, we are bound by R.C. Chapter 4117 to follow the language of the agreement. The common pleas court was correct in determining that appellant's wage rate was not subject to the wage formula set forth in Ohio Adm.Code 123:1–41–11(H), but was subject to the wage scale set forth in the collective bargaining agreement.

■ Furthermore, because the collective bargaining agreement provides for a final and binding arbitration of all grievances, including wage disputes, appellant's wage rate is subject solely to the grievance procedure outlined in Article 8; thus, the SPBR had no jurisdiction to determine appellant's wage rate on appeal.

Finally, this court is unpersuaded by appellant's argument that Article 44 requires that state law controls the instant case and confers jurisdiction on the SPBR. As noted by appellee, the surrendering of layoff procedures to the SPBR does not include the surrendering of wage disputes. Only issues regarding layoff procedures and the propriety of the layoff and recall itself are subject to SPBR review under Article 44. However, as previously noted, appellant did not challenge the propriety of the layoff; she challenged only her wage rate, which, we have already determined, is governed by the provisions of Article 39. Accordingly, we find that the common pleas court did not err in holding that the SPBR's exercise of jurisdiction in determining appellant's wage rate was contrary to law. Thus, the assignment of error is not well taken.

For the foregoing reasons, the assignment of error is overruled, and the judgment of the Franklin County Court of Common Pleas is hereby affirmed.

*Judgment affirmed.*

TYACK and LAZARUS, JJ., concur.