NOT RECOMMENDED FOR FULL-TEXT PUBLICATION
File Name: 05a0088n.06
Filed: February 4, 2005

No. 03-4526

## UNITED STATES COURT OF APPEALS
## FOR THE SIXTH CIRCUIT

| | | |
|---|---|---|
| ANDREA M. BELL, | ) | |
| | ) | ON APPEAL FROM THE |
| *Plaintiff-Appellant,* | ) | UNITED STATES DISTRICT |
| | ) | COURT FOR THE NORTHERN |
| V. | ) | DISTRICT OF OHIO |
| | ) | |
| MANAGEMENT & TRAINING | ) | OPINION |
| CORPORATION, et al., | ) | |
| | ) | |
| *Defendants-Appellants.* | | |

BEFORE:    COLE and CLAY, Circuit Judges, and HOOD, District Judge[*].

**R. GUY COLE, JR., Circuit Judge.**  This is an employment action brought under 42 U.S.C. § 1983.  Plaintiff-Appellant Andrea Bell  (a.k.a. Andrea Turza) claims that Defendants-Appellants Management & Training Corporation ("MTC"), Warden Neil Turner, and Major Steven Stormes violated her rights under the Fourteenth Amendment when MTC terminated her employment.  The district court granted summary judgment for the Defendants-Appellants and dismissed the case.   For the following reasons, we **AFFIRM** the district court.

### I.

Utah-based MTC is a private company in the business of operating corrections facilities in the United States.  In April of 2001, the Ohio Department of Rehabilitation and Corrections

---

[*] The Honorable Denise Page Hood, United States District Judge for the Eastern District of Michigan, sitting by designation.

("ODRC") awarded MTC the contract to operate the North Coast Correctional Training Facility, a minimum security prison and treatment center located in Grafton, Ohio (the "Grafton prison"). MTC began operating the Grafton prison on July 1, 2001.

Pursuant to the operating contract between the ODRC and MTC, MTC is required to implement and comply with various Ohio and Federal laws regarding the operation of the Grafton prison. However, the operating contract specifically exempts MTC from complying with Ohio and ODRC policies and procedures regarding human resources and employment. Rather, MTC is permitted to promulgate its own internal policies and procedures regarding employment. Pursuant to such procedures and policies, MTC generally requires a 180-day probationary period for new corrections employees. After the end of the probationary period, MTC performs a staff assessment in which a supervisor recommends whether the probationary employee should be retained.

Andrea Bell was employed by MTC's predecessor at the Grafton prison, CiviGenics Corporation, for the ten months prior to the transfer of operations to MTC. Bell's position was Executive Secretary to the Warden of the Grafton prison. Like other so-called "legacy employees," Bell was invited to apply for the same position with MTC. After an application and interview, Bell was hired by MTC as an administrative assistant to Warden Turner. At that time, Bell also executed an employment agreement with MTC, which specifically noted that she was an at-will employee and that she was subject to a 180-day probationary employment period.

In December 2001, MTC performed a review of its probationary employees, including Bell. Since Bell worked directly for Warden Turner, he evaluated her performance. Turner noted that Bell had failed to properly perform various filings, including administrative review filings for inmates

subject to discipline, and forms relating to the transfer of inmates from facility to facility. Turner also noted that Bell had been subject to official discipline. Turner then elected not to extend a non-probationary position to Bell.

Bell brought two suits under § 1983, claiming that MTC, Turner, and others, had violated her rights under the First Amendment and the Equal Protection and Due Process Clauses of the Fourteenth Amendment. The cases were consolidated, and MTC moved for summary judgment. In her opposition to MTC's motion, Bell raised only her Due Process claim, and stated she would "not pursue the other claims asserted in the complaints that began these actions."

The district court granted summary judgment for the Defendants-Appellants and dismissed the case. This timely appeal ensued.

## II.

### A.        Standard of Review

This Court reviews *de novo* a district court's grant of summary judgment under Federal Rule of Civil Procedure 56(c). *City Mgmt. Corp. v. U.S. Chem. Co., Inc.*, 43 F.3d 244, 250 (6th Cir. 1994). In doing so, the Court must "consider all the facts and inferences therefrom in the light most favorable to nonmoving party." *Id.*

### B.        42 U.S.C. § 1983

By its terms, § 1983 requires a plaintiff to show: (1) that the challenged conduct was attributable to a person acting under color of state law that (2) deprives the plaintiff of "any rights, privileges, or immunities secured by the Constitution" or the laws of the United States. 42 U.S.C.

§ 1983; *see also Adickes v. S.H. Kress & Co.,* 398 U.S. 144, 150 (1970). We will address each element in turn.

    *1. State Action*

    Section 1983 is only applicable to private parties where the actions taken "can fairly be seen as state action." *Rendell-Baker v. Kohn*, 457 U.S. 830, 838 (1982). The Sixth Circuit has recognized the following three tests for determining whether a private party has acted under color of state law: (1) the public function test; (2) the state compulsion test; and (3) the symbiotic relationship or nexus test. *See Wolotsky v. Huhn*, 960 F.2d 1331, 1335 (6th Cir. 1992); *Lansing v. City of Memphis*, 202 F.3d 821, 828 (6th Cir. 2000). Bell argues that MTC's actions qualify as state action under the public function test.

    The "public function test requires that the private entity exercise powers which are traditionally exclusively reserved to the state, such as holding elections." *Wolotsky*, 960 F.2d at 1335. Case law establishes that private companies operating prisons can be state actors for the purposes of controlling or providing services to inmates. *See West v. Atkins*, 487 U.S. 42, 54-56 (1988) (noting that doctor under contract with the state, who gave deficient medical treatment to a prisoner, was a state actor under the public function test); *Hicks v. Frey*, 992 F.2d 1450, 1458 (6th Cir. 1993) (private contractor operating a prison held to be state actor for purposes of § 1983 claim of deliberate indifference to the needs of a paraplegic inmate); *Street v. Corrections Corp. of Am.*, 102 F.3d 810, 814 (6th Cir. 1996) (prison officials employed by private contractor held state actors in § 1983 claim alleging deliberate indifference in failure to prevent another inmate's attack); *Flint v. Ky. Dep't of Corrections*, 270 F.3d 340, 351-52 (6th Cir. 2001) (noting that private party

providing housing and security for prisoners was a state actor under the public function test for the purposes of a § 1983 claim alleging complicity of prison officials in murder of inmate).

Ample case law also establishes, however, that a plaintiff's mere employment with a state contractor does not convert the employer into a state actor. For example, in *Rendell-Baker*, the plaintiffs were school teachers employed by a private company under contract with Massachusetts to operate a high school for maladjusted teens. The school received most of its students, and almost all of its funding, from various surrounding city schools. The teachers brought suit under § 1983 claiming that they were discharged in violation of certain constitutional rights. *See Rendell-Baker*, 457 U.S. at 831-32, 834-35. The Supreme Court disagreed, noting that the acts of "private contractors do not become the acts of the government by reason of their significant or even total engagement in performing public contracts." *Id.* at 841. The Supreme Court noted that while the high school was heavily regulated, Massachusetts did not regulate personnel actions within the school. *Id.* Regarding the "public function" of the privately run school, the Supreme Court emphasized that the proper inquiry is whether "the function performed has been traditionally the *exclusive* prerogative of the State." *Id.* at 842 (emphasis in original, internal quotes removed). Here, the mere fact that the "private entity performs a function which serves the public does not make its acts state action." *Id.*

Following *Rendell-Baker*, the Sixth Circuit has noted that mere employment with a government contractor does not render personnel decisions state action. *See Wolotsky*, 960 F.2d at 1333, 1335 (where Ohio had no input on personnel actions within a privately run facility that provided mental health, drug, and alcohol rehabilitative services to Summit County, despite

extensive funding, regulation, and oversight by the State, discharge of employees was not state action); *Crowder v. Conlan*, 740 F.2d 447, 451 (6th Cir. 1984) (personnel disciplinary action by privately run hospital with extensive Kentucky and county contacts held not state action, since State did not regulate personnel decisions of the hospital). Our sister circuits have specifically applied such reasoning to § 1983 prison employment actions. *See George v. Pacific CSC Work Furlough*, 91 F.3d 1227, 1230-32 (9th Cir. 1996) (terminated prison guard's § 1983 claim dismissed where State had no input or regulation governing employment decisions regarding discipline or termination at a privately-run prison); *Sherlock v. Montefiore Med. Ctr.*, 84 F.3d 522, 527 (2d Cir. 1996) ("The fact that a municipality is responsible for providing medical attention to persons held in custody may make an independent contractor rendering such services a state actor within the meaning of § 1983 with respect to the services so provided . . . but that fact does not make the contractor a state actor with respect to its employment decisions.") (internal citations removed); *Cunningham v. Southlake Ctr. for Mental Health, Inc.*, 924 F.2d 106, 107, 109 (7th Cir. 1991) (counselor employed by privately run prison challenged termination under § 1983; no state action found for employment actions by a private contractor).

Nor is it important that incarcerating prisoners is a "function traditionally reserved for the state." *Skelton v. Pri-Cor, Inc.*, 963 F.2d 100, 102 (6th Cir. 1991). The operation of prisons by private companies is commonplace and has been for many years. *See Richardson v. McKnight*, 521 U.S. 399, 404-07 (1997) (noting the long history of private firms managing or operating state prison systems). The foregoing case law is merely an extension of the uncontroversial principle that "[a]n entity may be a state actor for some purposes but not for others." *George*, 91 F.3d at 1230. The lack

of state action is especially apparent in internal employment matters, where even government employers are given considerable latitude. *See, e.g., Connick v. Myers*, 461 U.S. 138, 146-47 (1983) (noting that government employment decisions that do not violate laws or regulation are unreviewable, even if mistaken or unreasonable).

In the instant case, it is undisputed that Ohio had no input in, and no regulation applicable to, MTC's internal personnel actions. Indeed, the ODRC-MTC operating contract specifically excludes MTC from compliance with Ohio and ODRC personnel regulations. Nor are the reasons for Bell's termination a mere gloss for state action, a public function, or otherwise reviewable conduct. According to her direct supervisor, Bell was dismissed because she failed to adequately file certain reports and was subject to discipline – conduct that is the essence of an internal personnel decision.

*2. Property Right*

Section 1983 also requires a plaintiff to show some deprivation of a constitutional right. 42 U.S.C. § 1983. Since Bell is asserting a Fourteenth Amendment Due Process claim, she must establish that there is a "protected property or liberty interest." *Johnston-Taylor v. Gannon*, 907 F.2d 1577, 1581 (6th Cir. 1990). "A property interest can be created by a state statute, a formal contract, or a contract implied from the circumstances." *Ludwig v. Bd. of Trs. of Ferris State Univ.*, 123 F.3d 404, 409 (6th Cir. 1997). It is well-settled in Ohio that a probationary employee has no property interest in her employment. *Curby v. Archon*, 216 F.3d 549, 553-54 (6th Cir. 2000); *Ste. Marie v. City of Dayton*, 109 F. Supp. 2d 846, 854 (S.D. Ohio 2000); *Bashford v. City of Portsmouth*, 556 N.E.2d 477, 479-80 (Ohio 1990).

Nevertheless, Bell argues that such well-established precedent does not apply to her since she worked at the Grafton prison, albeit for two different companies, for a period longer than MTC's probationary period. For support, she notes that Ohio allows for bridging an individual's past service with current service for the purposes of a probationary period. Since Bell was employed by CiviGenics at the Grafton prison for ten months prior to her employment by MTC, she argues she cannot be a probationary employee.

This argument is without merit. Under the terms of the MTC-ODRC operating contract, MTC need not comply with the civil service protections under Ohio law and ODRC regulations. MTC therefore issued its own personnel policies, as permitted, which required that new employees are subject to a 180-day probationary period, with regular employment awarded based on a performance review and supervisor recommendations. It is not disputed that MTC complied with these internal policies. Furthermore, Bell specifically agreed in an employment contract that she was a probationary employee, and subject to MTC's internal policies and procedures. As Bell was clearly a probationary employee, she has no property right in continued employment.

## C.  Equal Protection Clause

Finally, Bell claims that the MTC-ODRC operating contract violates the Equal Protection clause of the Fourteenth Amendment. Since Bell waived this claim in district court, it is not reviewable. *See Baily v. Floyd County Bd. of Educ.*, 106 F.3d 135, 143 (6th Cir. 1997) (noting a court of appeals may not review a claim raised for the first time on appeal unless failure to consider the issue results in a plain miscarriage of justice).

**III.**

For the foregoing reasons, we **AFFIRM** the judgment of the district court in all respects.